STANDARD ACCIDENT INSURANCE COMPANY, A COR-
PORATION, PLAINTIFF, v. MONTCLAIR TRUST COM-
PANY, A CORPORATION, AND UNION COUNTY TRUST
COMPANY, A CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided June 8, 1954.

*Mr. Louis Auerbacher, Jr.,* attorney for plaintiff.

*Messrs. Weisman & Freedman,* attorneys for defendants.

WAUGH, J. S. C. (temporarily assigned). The defendant Union County Trust Company, a corporation, hereinafter referred to as Union County Trust, moves for summary judgment against the plaintiff. Plaintiff sues both the Union County Trust and Montclair Trust Company based upon payment of a check drawn by the New Jersey Mortgage

Company, a depositor of Union County Trust, on which the endorsements of two of three payees are alleged to be forged.

The Jersey Mortgage Company, a lender of funds on bonds and mortgages, operates upon a system whereby it uses for the closing of its loans, attorneys taken from a list approved by various title companies, and in this instance by the Lawyers Title Insurance Corporation of Richmond. Lawrence Owiter, an attorney then practicing in Montclair, was on the approved list of the Lawyers Title Insurance Corporation of Richmond. On October 27, 1949 Mr. Owiter submitted to the Jersey Mortgage Company an application for an F. H. A. loan in the sum of $3,600 to be issued to his clients, Raymond and Ida DeWolfe, who in fact were mother and son. The mortgage company issued its commitment in that amount to Mr. Owiter on December 13, 1949, and it was accepted by his clients. On December 16, 1949 the mortgage company sent to Mr. Owiter its check for $3,600 drawn on the Union County Trust and authorized him to disburse the funds under its title binder. A copy of this check is attached to the complaint. The check was drawn to the order of "Raymond F. DeWolfe and Ida C. DeWolfe, h/w and Lawrence Owiter, attorney." It is now alleged that Owiter forged the signatures of Raymond F. DeWolfe and Ida C. DeWolfe, h/w, and deposited the same to his trustee account in the Montclair Trust Company on December 19, 1949. The check was cleared through the Federal Reserve Bank and paid by the Union County Trust on December 21, 1949.

According to the testimony of Robert E. Goldsby, president and treasurer of the Jersey Mortgage Company, the bank statement of the Union County Trust Company showing the charge of $3,600 against the account of Jersey Mortgage was received by it some time between January 2 and January 10, 1950. The statement was accompanied by the checks for the month. of December 1949, including the check which the Jersey Mortgage Company had drawn to

Owiter and the DeWolfes and on which Owiter allegedly forged the signatures of the other payees. It further appears that there never was any communication addressed to the Union County Trust Company by the Jersey Mortgage Company relating in any way to the check for $3,600 or calling the bank's attention to the fact that the signatures of the payees had been forged. When New Jersey Mortgage learned of the forgeries, it immediately reported it to the Lawyers Title Insurance Corporation and no one else.

At the time the mortgage loan was applied for by Owiter there was a lien against the DeWolfe property in the sum of $2,400, represented by a first mortgage originally in the name of Frederick D. Pettet, Jr. and Connie Pettet, his wife. The proceeds of the $3,600 loan granted by the Jersey Mortgage Company were to be used to cancel the Pettet mortgage and to supply the DeWolfe's with the sum of $1,200, being the balance of the proceeds of the check. When the proceeds of the check for $3,600 were received by Owiter, he did not cancel the Pettet mortgage but instead retained the $2,400 and used the same for his own purposes. The sum of $1,200 was paid by him to the DeWolfes.

The Lawyers Title Insurance Corporation of Richmond had issued a title policy in connection with the transaction, out of which Owiter received the $3,600 check from the Jersey Mortgage Company. This title policy of insurance was issued only to the Jersey Mortgage Company and insured its mortgage as being a first lien upon the premises.

The Lawyers Title Insurance Corporation was covered by the plaintiff on a fidelity bond by the terms of which the plaintiff agreed to reimburse the Lawyers Title Insurance Corporation for any losses which it sustained through fraud or dishonesty committed by any of its approved closing attorneys in connection with the handling of funds delivered to said attorneys for closing a real estate purchase or loan transaction in which the Lawyers Title Insurance Corporation proposed to issue or issued a title insurance binder or policy. The DeWolfe mortgage was subsequently sold by

the Jersey Mortgage Company to the United National Bank of Cliffside Park in March of 1950. In February of 1951 the Jersey Mortgage Company discovered that the Pettet mortgage was still open of record and was thus a prior lien to the DeWolfe mortgage. The Jersey Mortgage Company thereupon called on the Lawyers Title Insurance Corporation of Richmond, which had issued the title policy in connection with the transaction handled by Owiter, to make good upon its policy and to satisfy the Pettet mortgage, the then existing first lien. Thereupon the Lawyers Title Insurance Company paid the Pettets the balance due on their mortgage and took an assignment of said mortgage on August 13, 1951.

Thereafter, the Lawyers Title Insurance Corporation, at the insistence of the Standard Accident Insurance Company, instead of cancelling the Pettet mortgage, subordinated the Pettet mortgage to the mortgage of the Jersey Mortgage Company. By reason of the loss sustained by the Lawyers Title Insurance Corporation arising out of the defalcation of Owiter in connection with the mortgage closing, the plaintiff paid the Lawyers Title Insurance Corporation of Richmond for the loss which it sustained in paying off the Pettet mortgage. In connection with the payment of said loss, the Jersey Mortgage Company on February 1, 1952 assigned to the Lawyers Title Insurance Corporation all of its right, title, and interest in the aforesaid check of $3,600. On February 18, 1952 the Lawyers Title Insurance Corporation in turn assigned all of its right in said check to the Standard Accident Insurance Company and on the same date also assigned to the Standard Accident Company the Pettet mortgage.

Thereafter, the DeWolfes were informed that their property was subject to two mortgages—the original Pettet mortgage now held by the plaintiff by assignment, and the mortgage of the Jersey Mortgage Company now held by the United National Bank of Cliffside Park by assignment. The DeWolfes refused to make any further payments on account of the mortgage executed to the Jersey Mortgage Company

until the Pettet mortgage was cancelled of record. Thereupon, the United National Bank of Cliffside Park threatened to foreclose, and the DeWolfes insisted that they would set off the balance due on the Pettet mortgage as a credit. Because of this threatened litigation, the Standard Accident Insurance Company cancelled the Pettet mortgage and took an assignment from the DeWolfes dated August 5, 1952, in which the DeWolfes assigned to the plaintiff any claims which they may have against Mr. Owiter, the Montclair Trust Company, and Jersey Mortgage Company, and any other person, firm or corporation, arising out of the alleged forgery of the $3,600 check.

Plaintiff now sues Union County Trust Company and Montclair Trust Company. The complaint, insofar as it bears upon the action of Union County Trust Company, is as follows:

In count 1 plaintiff sues as assignee of the DeWolfes', payees of the check, and on count 3 as assignee subrogee of the Jersey Mortgage Company and Lawyers Title Insurance Corporation.

Defendant Union County Trust Company bases its motion for summary judgment on count 3 upon *N. J. S. A.* 17:9A–226*B*, which section provides as follows:

"No banking institution shall be liable to a depositor for an amount charged to or collected from him because of the payment by the banking institution of a check, note, acceptance or other instrument for the payment of money upon which the signature of any party, other than that of the depositor, was forged, or which was indorsed without authority, unless, within two years after the return of such instrument to the depositor, he shall notify the banking institution in writing that the signature of a party to the instrument, other than that of the depositor, was forged, or that the instrument was indorsed without authority."

Plaintiff argues that even if the statute is applicable, the right to the benefit of it was waived, or that the Union County Trust Company is estopped from having the benefit of the application of this statute by reason of the special circumstances in the case.

The waiver and special circumstances alleged are as follows:

■ First, that for a period of time, namely, December 21, 1949 to January 10, 1950, the defendant Union County Trust Company had possession not only of the cancelled check with the forged signature, but also of the mortgage papers containing the genuine signatures of the DeWolfes. The bank admittedly had these mortgage papers as security for a line of credit extended to the Jersey Mortgage Company.

Based upon these facts, plaintiff urges that Union County Trust Company could have detected the forgery by comparing signatures; that is, the signatures on the check with those on the mortgage papers.

In other words, plaintiff contends that whenever a bank has papers in its possession which enable it to check signatures, no matter what department of the bank those papers are in, and it fails to check the signatures, it is then estopped from setting up the statute and should be found to have waived the statute; that under the factual situation here, the estoppel or waiver becomes a fact question for the jury. No authority for such a proposition is advanced.

■ Next, it is urged that by reason of the fact that Carlton S. Stallard, vice-president and secretary of the Jersey Mortgage Company, who admittedly was in full charge of the DeWolfe-transaction, was also, since January 1951, a member of the board of directors of Union County Trust Company, regularly attending its meetings; and since Stallard had knowledge of the forgery, that knowledge is imputable to Union County Trust Company, and Union County Trust Company is estopped from pleading the statute.

Admittedly, Union County Trust Company never had notice in writing required by the statute.

■ I have considered the deposition and affidavits filed on this motion and argument of counsel. I find that the statute is a bar to any action by the Jersey Mortgage Company against Union County Trust Company, and since plain-

tiff's rights are derivative from the Jersey Mortgage Company, plaintiff cannot recover. There is no genuine issue as to any material fact on count 3 of the complaint, nor is there any genuine issue as to any material fact on the question of waiver or estoppel. That being so, there must be summary judgment.

"The main question before us is the propriety of granting the summary judgment. Summary judgment is necessarily based on a finding that there is palpably no genuine issue as to any material facts and that the defendant as the moving party is entitled to judgment as a matter of law, *R. R.* 4:58–3." *Standard Accident Insurance. Co. v. Pellecchia,* 15 *N. J.* 162, at 175.

■ Counsel for plaintiff argues that plaintiff should be entitled to stand in the shoes of Union County Trust Company as against Montclair Trust Company, its co-defendant. He urges that Union County Trust Company has a perfect cause of action against Montclair Trust Company on its guaranty and that Union County Trust Company should not be permitted to sit by and not bring that cause of action.

In support of this argument, he quotes a portion of the language found in *Standard Accident Insurance Co. v. Pellecchia,* at *page* 171, as follows:

"Subrogation is a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it."

And further on *page* 171,

"Subrogation is highly favored in the law."

And further on *page* 172,

"The right does not arise out of contract but rather exists without the consent of the insured."

His argument overlooks the point that there is no privity between plaintiff and Union County Trust Company. In the

*Pellecchia* case, the Standard Accident Insurance Company was entitled to stand in the shoes of Columbus by virtue of its payment to Columbus. Here, Standard Accident stands in the shoes of the Jersey Mortgage Company and of the Lawyers Title Insurance Corporation. As to those corporations, Union County Trust Company has a defense. Plaintiff overlooks the following language from the *Pellecchia* case, at *page* 172:

"The subrogee in effect steps into the shoes of the insured and can recover only if the insured likewise could have recovered, *Sullivan v. Naiman, supra,* 130 *N. J. L.* 278, 280, 32 *A.* 2d 589; *Connecticut Savings Bank of New Haven v. First National Bank & Trust Co. of New Haven,* 138 *Conn.* 298, 84 *A.* 2d 267, 270 (*Sup. Ct. Err.* 1951). He is subject to all legal and equitable defenses that the third party may have either against him or against the insured and there can be recovery only if the cause is just and enforcement is consonant with right and justice."

■ Count 1 presents no problem. Plaintiff is assignee of payees, the DeWolfes. The DeWolfes as payees of the check have no right of action against Union County Trust Company, the drawee bank. *National Bank of N. J. v. Berrall,* 70 *N. J. L.* 757 (*E. & A.* 1904); *Liberty Trust Co. v. Haggerty,* 92 *N. J. Eq.* 609 (*Ch.* 1921); *Liberty Trust Co. v. Ford,* 93 *N. J. Eq.* 198 (*E. & A.* 1921).

Further, since the DeWolfes admittedly received $1,200 of the proceeds of the check, and since the prior mortgage was paid by the Lawyers Title Insurance Corporation, the DeWolfes suffered no loss and therefore have no rights which they can assign.

There will be summary judgment on count 1.