**F. F. STAUFFER, Appellant,**

v.

**FROST NATIONAL BANK OF SAN ANTONIO, Appellee.**

No. 13024.

Court of Civil Appeals of Texas.
San Antonio.

May 23, 1956.

Lang, Byrd, Cross & Ladon, J. B. Lewright, San Antonio, for appellant.

Carl Wright Johnson, Nat L. Hardy, San Antonio, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by F. F. Stauffer, doing business as Stauffer Photo Service, a depositor of the Frost National Bank, against Frost National Bank, a banking corporation, seeking judgment in the sum of $8,000, being the total amount of three forged checks charged to plaintiff's account by the bank. At the conclusion of the evidence, the trial court granted defendant's motion for an instructed verdict and judgment was rendered that plaintiff take nothing, from which judgment F. F. Stauffer has prosecuted this appeal.

The Bank defended, among other things, upon the theory that it had not been given written notice of the forgery of these checks within one year after the checks were paid, as is provided for by Art. 342-711, Vernon's Ann.Civ.Stats., reading in part as follows:

"* * * No depositor shall be permitted to dispute any charge to his account on the ground that the same is based upon a forged, unauthorized, raised or altered item unless, within one (1) year from the time check was paid, he shall notify the bank in writing that the item in question is forged, unauthorized, raised, or altered."

Appellant first contends that there was a substantial compliance with the provisions of Art. 342–711, supra.

The record shows that one check was for the sum of $2,000, dated August 17, 1945, and the other two were for the sum of $3,000 each, one being dated August 17, 1945, and the other, August 18, 1945. Each was made payable to a Mexican corporation by the name of Puertas Y Ventanas S de R.L. C.V. or bearer. Appellant's name was forged to each of these checks and each was endorsed with a rubber stamp which included the name of the corporation, Puertas Y Ventanas S de R.L.C.V., and the signature of Jose Luis Vargas, appellant's son-in-law, who was the manager of the Mexican corporation and authorized to endorse checks on behalf of the corporation. The first check, for the sum of $2,000, was mailed to appellant in his bank statement for the month of August, 1945. Appellant discovered the forgery at once and went to the Bank and had a conversation with a Vice-president of the Bank, T. B. Muller. Mr. Muller suggested that they look at his cancelled checks for the month of September, 1945, to see if there were other forgeries. This they did and discovered the two additional forged checks payable to Puertas Y Ventanas S de R.L. C.V. or bearer, each in the sum of $3,000, and each being endorsed as was the first check. Appellant's daughter owned practically all the stock in this corporation, and appellant had advanced the sum of about $50,000 to the corporation, with the expectation that he would be repaid when there were profits. His son-in-law, Jose Luis Vargas, was the general manager of the corporation. Appellant told Muller that he thought he knew where the forged checks came from and that he would like to take checks to Mexico and see if he could get the matter straightened up—that it was a family affair. This arrangement was satisfactory to Muller who took a written receipt signed by appellant for each of the $3,000 checks and delivered them to appellant. Appellant still had the forged check for the sum of $2,000 in his possession. Some time later Muller saw appellant and asked him how he was coming with reference to the forged checks, and he stated that he had not yet been successful in getting the matter straightened out. During the time appellant was trying to get the matter settled he advanced some $4,000 to Puertas Y Ventanas, as was reflected by checks coming to appellee Bank for charge against appellant's account. Ultimately Jose Luis Vargas became a fugitive from justice and Puertas Y Ventanas became completely insolvent. After these happenings, and some ten months after the forged checks had been turned over to appellant, he again came to the bank and told Muller that he had been unable to get the matter straightened up and that he wanted the Bank to give his account credit for the amount of the three forged checks. Muller told him that if he had made this request much earlier they would have done so. Muller suggested that they talk to Mr. Frost. They went together and talked to a Mr. Frost. Appellant was not sure whether it was Joe Frost, Chairman of the Board of the Bank, or Tom Frost, President of the Bank. It seems to be immaterial which Mr. Frost it was to whom they talked. Mr. Frost told appellant that the matter was out of his hands, that he would have to see a Mr. Klein, who had an office on Losoya Street. Mr. Klein was an agent of the insurance carrier of the Bank. Appellant went by to see Mr. Klein but he was out and he was not thereafter successful in seeing Mr. Klein. Appellant did not within one year, as is required by Art. 342–711, supra, give written notice to the Bank that the checks were forgeries and that he expected the Bank to give him credit on his account for the amount of the checks, unless appellant's signing of the two receipts was such written notice.

Appellant contends that when he signed the two receipts for the checks he thereby gave written notice of the forgeries, such as is required by Art. 342–711, supra. We do not agree. They were simple receipts for the two checks. The receipts were placed with appellant's other cancelled checks in lieu of the checks which were delivered to him. The receipts said nothing even intimating that the checks were forged, if anything, they were to the contrary.

It is clear that the Bank is relieved from liability by the provisions of Art. 342–711, supra, unless the Bank has waived its right to have such written notice, or unless the Bank is estopped from claiming the benefits of the provisions of that article.

██ If the evidence was conflicting as to such waiver or estoppel then, of course, the matter should have been submitted to the jury. The evidence was not sufficient to raise a question of fact for the jury as to such waiver or estoppel. Certainly, the Bank or its officials did not intentionally waive the protection afforded it by the statute, and we find nothing in the record which shows that it impliedly did so. It is true that the Bank had oral notice that the checks were forged, but the statute requires written notice. This oral notice which was given to the Bank at the time the checks were delivered to appellant did not put the Bank on notice that appellant was expecting it to make the checks good by giving appellant's account credit for the amount of the checks, or by paying him that amount in some way. Just the opposite was indicated.

Courts of other States, having similar statutes as Texas, have held that such statutes are statutes of limitation and that the notice required is not simply the information that the check is forged, it must amount to a demand upon the bank for payment of the forged check, or the depositor must at least make it known to the bank that he is looking to the bank for reimbursement. Herbel v. Peoples State Bank, 170 Kan. 620, 228 P.2d 929; Flaherty v. Bank of Kimball, S. D., 68 N.W.2d 105; United States Fidelity & Guaranty Co. v. Beall, D.C., 73 F.Supp. 977; Standard Accident Ins. Co. v. Montclair Trust Co., 31 N.J.Super. 253, 106 A.2d 368; Cohen v. Manufacturers Trust Co., Sup., 144 N.Y.S. 2d 366.

██ When appellant first talked to Muller he indicated that he was not then looking to the bank for reimbursement, but wanted to get the matter settled himself. Some ten months later, after he had failed in his efforts, after the Mexican corporation had become hopelessly insolvent and his son-in-law had become a fugitive from justice, he came to the Bank and for the first time made an oral demand on the officers of the Bank that they take care of the forged checks. At this late date, under all the circumstances, the Bank owed him no particular duty to assist him in making a legal demand on it by informing him that the statutes required such notice to be in writing. The officers of the Bank certainly did not mislead appellant in any way by telling him he was too late, that the matter was out of their hands, and to see Mr. Klein. The Bank did not waive its rights, nor is it estopped to claim the protection given it by the statute. It could well be that Art. 342–711, supra, was enacted for the very purpose of taking care of a confused situation such as we have here. Appellant having failed to give the Bank written notice of the forgeries and of the fact that he was expecting the Bank to reimburse him for the amount of the checks, is barred from maintaining this suit by the provisions of Art. 342–711, supra, and the trial court did not err in granting appellee's motion for an instructed verdict. Herbel v. Peoples State Bank, supra; Flaherty v. Bank of Kimball, supra; United States Fidelity & Guaranty Co. v. Beall, supra; Standard Accident Ins. Co. v. Montclair Trust Co., supra; Cohen v. Manufacturers Trust Co., supra.

The judgment is affirmed.