# EASTERN BUILDING AND LOAN ASSOCIATION *v.* WILLIAMSON.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 152. Argued January 28, 1903.—Decided March 23, 1903.

Courts of one State do not take judicial notice of the laws of another State, whether written or unwritten. Statutes and decisions must be proved as facts, but when proved their construction and meaning are for the consideration and judgment of the court, and the fact that an attorney of the enacting State has testified without contradiction as to the construction of a law of that State does not conclude the court and make it its duty to find as a fact that such was the true construction.

While this court does not take judicial notice of the decisions of the courts of one State in a case coming from the courts of another State, it may properly refer to the opinion of the highest court of a State as to the construction of a statute of that State when such statute is involved in a case before this court and this applies to a decision rendered after the judgment appealed from was rendered.

The construction given by the Supreme Court of South Carolina and by the Court of Appeals of New York to the building and loan law of New York to the effect that it does not relieve a building and loan association from an obligation to pay the full par value of certificates at a date stated therein whether earned or not commends itself to this court as a correct construction thereof.

THIS action was commenced on January 12, 1898, in the Circuit Court of Darlington County, South Carolina, by Bright Williamson against the Eastern Building and Loan Association of Syracuse, New York, to recover the face value of twenty-five shares of stock in the defendant association, less a sum theretofore borrowed by the plaintiff from the association. Judgment in his favor for the full amount claimed was rendered in the trial, affirmed by the Supreme Court of the State, 62 S. C. 390, and thence brought here on this writ of error.

The case is similar to that of *the same plaintiff in error* v. *Ebaugh,* 185 U. S. 114. Here, as there, the stock certificates contained an absolute promise to pay " the sum of one hundred dollars for each of said shares at the end of seventy-eight months from the date hereof." Here, as there, circulars were shown to the plaintiff to induce his subscription, one of which contained this statement :

" For the investor.

" This association issues three classes of certificates, designated as instalment, paid-up and fully paid. All of which are guaranteed to mature in 6½ years.

" Amply secured by first mortgages on real estate.

" Paid-up stock doubles in 6½ years.

" Fully paid certificates guaranteed.

" Quarterly dividends, 7 per cent per annum.

" For the borrower.

" This association has no auction sales.

" No bidding for loans.

" And a definite time for repaying a loan."

Another, the following :

" Only association giving investor and borrower definite maturity contract in 78 months. Only association issuing definite contracts."

The defendant pleaded that there was no absolute promise to pay at the end of seventy-eight months, but only an estimate of the time at which the stock would mature ; that an absolute promise to pay at the end of seventy-eight months was inconsistent with the nature of the corporation as a mutual company and against the provisions of its charter and by-laws, and also illegal by the laws of New York under which the company was incorporated.

On the trial before a jury, defendant, in support of its answer, introduced the charter and by-laws of the company, the statutes of New York under which it was incorporated, certain decisions of the courts of that State, and the testimony of the assistant secretary and actuary of the defendant that the shares of stock had not, in fact, matured ; also the deposition of its general attorney, who, after affirming his familiarity with the law of that State regarding building and loan associations, of which, as he said, he had made a special study, testified that, under the defendant's articles of incorporation and by-laws, and the laws and decisions of New York, the heretofore referred to clause in the certificate of stock " is not to be construed or held as a guaranty period of maturity, but, on the other hand, an estimated period," and that the association is not required to pay the face value of the certificates until " the amount paid by the plaintiff on his shares of stock, augmented by the earnings apportioned and credited thereto, equal the par value." Upon this testimony the defendant asked the court to charge the jury that full faith and credit must be given to the laws of New York, as construed by its courts, and that by reason thereof, " under the terms of the contract of membership, and the contract of loan, by-laws and charter, the transaction between the plaintiff and defendant does not terminate merely upon making a fixed number of payments, but only when the dues paid in by

him, with the profits apportioned to his shares, make them equal their par value of $100.00 per share." Other instructions of a similar nature, or looking to the same result, were also asked, but all were refused.

*Mr. William Hepburn Russell* for plaintiff in error. *Mr. William Beverly Winslow* and *Mr. D. A. Pierce* were with him on the brief.

*Mr. H. E. Young* for defendant in error.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

The Federal question presented arises on the contention that the South Carolina courts did not give "full faith and credit . . . to the public acts, records and judicial proceedings" of the State of New York, as required by section 1, article IV, of the Constitution of the United States.

Courts of one State do not take judicial notice of the laws of another State, whether written or unwritten. They must be proved as facts. *Talbot* v. *Seeman,* 1 Cranch, 1, 38 ; *Livingston* v. *The Maryland Insurance Co.,* 6 Cranch, 274; *Ennis* v. *Smith,* 14 How. 400, 426; *Pierce* v. *Indseth,* 106 U. S. 546, 551; *Chicago & Alton Railroad* v. *Wiggins Ferry Co.,* 119 U. S. 615, 622; *Lloyd* v. *Matthews,* 155 U. S. 222; *Building & Loan Association* v. *Ebaugh,* 185 U. S. 114, 121; *Nashua Savings Bank* v. *Anglo-American Co., post,* p. 221.

The law of New York was so proved in this case, and the contention is that it was not rightly construed by the South Carolina courts; that the law of New York which entered into and formed a part of the contract sued on was not given by those courts the same force and effect that it had in New York, and that hence the rights secured by the Constitution of the United States to the plaintiff in error were denied. If it appeared that the South Carolina courts, without questioning the validity, simply construed a statute of New York, no Federal question would be presented. *Glenn* v. *Garth,* 147 U. S. 360; *Lloyd* v.

*Matthews,* 155 U. S. 222; *Banholzer* v. *New York Life Insurance Co.,* 178 U. S. 402; *Johnson* v. *New York Life Ins. Co.,* 187 U. S. 491.

But it is contended that the construction of the New York statutes as applicable to this contract was shown by the decisions of the courts of that State and the opinion of one learned in its laws; that there was no contradictory testimony, and, therefore, it was the duty of the South Carolina courts to find as a fact that such was the true construction.

The promise to pay one hundred dollars at the end of seventy-eight months is plain and unambiguous. It is a positive promise to pay at a fixed time. The circulars presented by the company to the plaintiff as an inducement for his subscription only emphasize the certainty of the promise. So, if the inquiry were limited to the mere language of the promise and the representations which led up to it, but one decision was possible. It is said that the promise made in the certificate is expressly based upon "full compliance with the terms, conditions and by-laws printed on the front and back of this certificate;" that one of the conditions expressed on the face of the certificate is : " The shareholder agrees to pay, or cause to be paid, a monthly installment of seventy-five cents on each share named in this contract, the same to be paid on or before the last Saturday of each month until such share matures or is withdrawn ;" that it contained this further stipulation : "Payable in the manner and upon the conditions set forth in said terms, conditions and by-laws hereto attached," and that these matters thus referred to had the effect of changing the absolute promise to a conditional one. All these were received in evidence, and when so received it became a matter of judicial construction to determine whether they had such effect, and that was a question which, nothing else being shown, was for the consideration of the courts in which the litigation was pending. In like manner, after the decisions of the courts of New York were received in evidence, their meaning and scope became matters for the same consideration. While statutes and decisions of other States are facts to be proved, yet when proved their construction and meaning are for the consideration and judgment of the courts

in which they have been proved. Nor is the rule changed by the testimony given in the deposition of defendant's counsel, for, as he states, his opinion is based on the statutes, the articles of incorporation and the decisions admitted in evidence, together with similar decisions of other States under like statutes, articles of incorporation and by-laws. No witness can conclude a court by his opinion of the construction and meaning of statutes and decisions already in evidence. *Laing* v. *Rigney*, 160 U. S. 531. The duty of the court to construe and decide remains the same. It must be remembered that the effort here made is to change the obligations which the defendant apparently assumed by the issue to plaintiff of its certificates of stock, and to justify such change by its articles of incorporation, the statutes of the State of New York under which it was created, and the decisions of the courts of that State. There is no suggestion of any peculiar local law in New York independent of that created by these articles and statutes and shown by its decisions, and their effect upon the terms of the contract was a matter for judicial construction by the courts of South Carolina. That the defendant so understood the matter is apparent from the instructions it asked.

The conclusion reached by the courts of South Carolina that the articles of incorporation and by-laws and the statutes of New York did not alter the apparent meaning of the contract was correct. The absolute promise was not so inconsistent with the articles of incorporation or by-laws as to be void. The by-laws at the time of making this contract contained no such provision as appears in *Daley* v. *People's Building &c. Association*, 172 Massachusetts, 533. There the provision was that "whenever the dues paid and dividends declared shall equal the par value of the shares held by any shareholder, said shares of stock shall be canceled," and the shareholder "shall be entitled to receive  .  .  .  the par value of the shares named,  .  .  . and no more." Here "all shareholders shall pay or cause to be paid a monthly instalment of seventy-five cents on each share named in their certificate, until the same shall be fully paid." Article 14, section 14. But in sections 21 and 22 of the same article are these provisions for a different mode and amount of payment;

"Sec. 21. And it is hereby expressly agreed between all shareholders and this association, that a payment of one hundred dollars per share, named in their certificate, that has been in force till maturity shall be accepted as full payment of all claims on their certificate or against this association.

"Sec. 22. Paid-up and non-assessable stock may be issued and sold at the price of fifty dollars per share, payable on date of issue. Any parties holding such paid-up stock, wanting to withdraw the same before maturity, may do so and receive six per cent annual interest from the date of issue of said stock."

Neither was the promise *ultra vires* the corporation. We are saved from the necessity of an extended discussion of these questions by a recent opinion of the Court of Appeals of New York in the case of *Vought v. this defendant, Eastern Building & Loan Association,* decided December 2, 1902, 172 N. Y. 508. It is true that the decision was not offered in evidence on the trial of this case in the South Carolina court. It had not then been announced. And it is also true that we do not take judicial notice of the decisions of the courts of one State in a case coming to us from the courts of another. *Hanley v. Donoghue,* 116 U. S. 1, 6; *Chicago & Alton Railroad v. Wiggins Ferry Co.,* 119 U. S. 615-622; *Lloyd v. Matthews,* 155 U. S. 222, 227. But nevertheless we may properly refer to the opinion as a construction of the law, and the views therein expressed not only commend themselves to our judgment as intrinsically sound, but also, as the views of the law of New York entertained by the justices of its highest court, have a peculiar and persuasive appropriateness. Referring to the contention that the terms of the articles of incorporation were inconsistent with the absolute promise contained in this certificate that court said:

"In other words, the defendant's contention is that those provisions were sufficient to change an absolute promise to pay into a conditional one dependent upon the success of its enterprise. We find nothing in these provisions which would justify any such conclusion. The provision in paragraph one that the plaintiff should pay until the share is paid or withdrawn, is entirely consistent with the agreement for absolute payment for the shares by the defendant at the time named, as by its con-

tract it agreed that the plaintiff's shares should mature at that time."

Again, referring to the contention that the absolute promise contained in such certificate was *ultra vires* the corporation, it observed:

"We deem it unnecessary at this time to determine whether the defendant was authorized by that statute to enter into such contracts, for if we assume that the making of them was in excess of the express power conferred upon the corporation by that statute, still, as the contracts involved no moral turpitude and did not offend any express statute, they were not illegal in a sense that would prevent the maintenance of an action thereon. It is now well settled that a corporation cannot avail itself of the defence of *ultra vires* when the contract has been, in good faith, fully performed by the other party, and the corporation has had the benefit of the performance and of the contract. As has been said, corporations, like natural persons, have power and capacity to do wrong. They may, in their contracts and dealings, break over the restraints imposed upon them by their charters; and when they do so their exemption from liability cannot be claimed on the mere ground that they have no attributes nor facilities which render it possible for them thus to act. While they have no right to violate their charters, yet they have capacity to do so, and are bound by their acts where a repudiation of them would result in manifest wrong to innocent parties, and especially where the offender alleges its own wrong to avoid a just responsibility. It may be that while a contract remains unexecuted upon both sides, a corporation is not estopped to say in its defence that it had not the power to make the contract sought to be enforced, yet when it becomes executed by the other party, it is estopped from asserting its own wrong and cannot be excused from payment upon the plea that the contract was beyond its power. *Bissell* v. *Mich. So. & No. Ind. R. R. Cos.*, 22 N. Y. 258; *Whitney Arms Co.* v. *Barlow*, 63 N. Y. 62; *Rider Life Raft Co.* v. *Roach*, 97 N. Y. 378; *Holmes, Booth & Haydens* v. *Willard*, 125 N. Y. 75, 80; *City of Buffalo* v. *Balcom*, 134 N. Y. 532; *Bath Gas L. Co.* v.

*Claffy,* 151 N. Y. 24; *Moss* v. *Cohen,* 158 N. Y. 240, 249; *Hannon* v. *Siegel-Cooper Co.,* 167 N. Y. 244."

We deem it unnecessary to add any observations of our own to these satisfactory declarations of the law of New York.

A single matter remains to be noticed. It is contended that the contract evidenced by the certificates was changed by a loan subsequently obtained by the plaintiff from the defendant upon the security of the shares—a loan obtained after the by-laws had been amended to make, as alleged, more clear the obligations assumed by the issue of share certificates. That amendment is found in section 3, article 8, which as amended reads:

"SEC. 3. Installment stock shall mature and be payable when the dues paid thereon with the profits apportioned and credited thereto shall equal one hundred dollars per share. Paid-up stock shall mature and be payable when the dues thereon with the profits apportioned and credited thereto in excess of any cash dividends, if any, that may be paid, shall equal one hundred dollars per share; and unless otherwise provided all other stock shall be payable as provided by the by-laws or certificates of shares."

But it is not shown that there was any express agreement between the parties to change the terms of the original contract; the amendment was clearly prospective in its operation, *Knights Templars' & M. L. Indemnity Co.* v. *Jarman,* 187 U. S. 197; and we are unable to perceive that the mere borrowing or the promise to return the money so borrowed had in themselves any effect upon the prior contract.

We see no error in the record, and the judgment of the Supreme Court of South Carolina is

*Affirmed.*

MR. JUSTICE HARLAN and MR. JUSTICE WHITE concurred in the result.