DANIEL LUMBER COMPANY, J. W. Daniel, Charles H. Daniel and R. W. Daniel,

v.

EMPRESAS HONDURENAS, S. A.

No. 14888.

United States Court of Appeals Fifth Circuit.

Sept. 3, 1954.

Rehearing Denied Oct. 7, 1954.

Richard R. Cole, Jesse W. McDaniel, Houston, Tex., J. Hubert Lee, Austin, Tex., Cole, Patterson, Cole & McDaniel, Houston, Tex., for appellants.

J. D. Wheeler, Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, Tex., for appellee.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and WRIGHT, District Judge.

RIVES, Circuit Judge.

Empresas Hondurenas, S.A., a corporation chartered under the laws of the Republic of Honduras, sued Daniel Lumber Company, a partnership, and the individual members thereof on a written contract between the plaintiff corporation and the defendant partnership executed in September, 1947. That contract recited that the plaintiff corporation was the owner of the standing pine timber on the property known as La Soledad consisting of approximately 32,000,000 acres of land in the Republic of Honduras. The plaintiff corporation agreed to sell to the defendant partnership "the stumpage rights to said timber, that is to say, the right to sever said pine timber from the soil and convert the same into lumber." The contract was to continue for a period of five years with the option in the defendant partnership to continue it for an additional five years. The partnership agreed that it would cut and convert a minimum of 6,000,000 board feet of lumber per year, the first year of the obligation to produce said minimum to begin February 1, 1948. The partnership agreed to pay to the corporation as a consideration for the sale of said stumpage rights, at the general office of the corporation in the Republic of Honduras, $6 per thousand feet board measure on all lumber sold at a market price of less than $40 per thousand feet board measure, and on all lumber sold at a market price of $40 or more per thousand feet board measure 15% of the market price of said lumber at Honduras port less the actual freight charges from the mill to said port up to and including $60 per thousand board feet of said lumber, and on any market price exceeding $60 per thousand board feet 25% on that part of the market price in excess of such $60. The partnership agreed to pay to the corporation "all sums due on all lumber actually sold at the end of each three months period during the term of this contract at the rates hereinabove set out." It was expressly agreed and stipulated that, if in any year the partner-

ship failed to cut and convert into lumber the minimum agreed on of 6,000,000 board feet, then the partnership would pay $6 per thousand board feet on the deficit between the amount actually cut and converted into lumber and the 6,000,000 board feet minimum, the balance on said deficit to be paid when the timber was cut and converted into lumber and actually sold at the rates set out, the payment of $6 per thousand board feet on said deficit to be paid on the date of the first quarterly payment after the termination of the year. The contract further provided that, with the execution of the contract, the partnership had paid to the corporation the sum of $15,000 and that, if the contract was carried out according to its terms, the partnership would have credit on its payment for the last quarter of the first year of operations of said $15,000 and that, if the partnership failed or refused to carry out its obligations under the contract, the said $15,000 should be treated as liquidated damages for the breach of the contract by the partnership. The contract further provided that the partnership would be released from its obligation to make the minimum payment of $6 per thousand board feet on any deficiency under 6,000,000 board feet measure per year only in the event that operations were suspended by an act of God or causes wholly beyond the control of the partnership.

Suit was brought on the express provisions of the contract, the plaintiff corporation alleging a failure of the defendant partnership to account for timber actually cut and, subject to such accounting, a failure to make payment for two years of the minimum obligation under the contract.

The defendants answered that, while they executed the contract in the City of San Antonio, Texas, it was later executed on behalf of the plaintiff corporation by its President, I. A. McNab, in Honduras and the $15,000 was paid to the plaintiff corporation in Honduras; that it was mutually agreed that all of the terms of the contract were to be performed in Honduras; and that the agreement must be interpreted according to the laws of Honduras; further, that the agreement was not binding upon the defendants under the laws of Honduras, because it had as its object the creation or transmission of rights over immovable property and the laws of Honduras required a public document to be executed and notarized in the case of such contracts, and that this instrument was not so executed and notarized.

The defendants further answered that the plaintiff corporation through its President, I. A. McNab, had represented that there was no less than 100,000,000 board feet of timber on said property; that the defendants did not check the title to said property; nor estimate the timber growing thereon claimed to be owned by the plaintiff, "in that since said sale was on the basis of so many dollars per thousand board feet, there was no reason for these defendants to scale or estimate said timber", but that the defendants relied upon the plaintiff's representations; that such representations were false, and that the plaintiff did not own all of the pine timber on the property known as La Soledad, and that there was not 100,000,000 board feet of timber on La Soledad.

At the close of the evidence, the defendants filed a motion for directed verdict on the ground that the plaintiff had failed to plead and prove a cause of action and right of recovery under the laws of Honduras, which motion was overruled.

On special issues the jury found the following facts: (1) that the approximate amount of timber cut from the land known as La Soledad by the defendants was 4,000,000 board feet; (2) that plaintiff's President, in showing to members of defendant partnership the pine ridges on La Soledad, did not represent the same as a part of approximately 32,000 acres of pine timber owned by plaintiff; (3) that, prior to the execution of the contract, the chairman of the Board of Directors of plaintiff corporation did not represent to the defendant that plaintiff was the owner of approximately 32,-

000 acres of pine timber in La Soledad; (4) that immediately prior to the execution of the contract there was *not* thirty million board feet of standing pine timber on the tract of land known as La Soledad; (5) that the contract did *not* relate to rights in real property situated in the Republic of Honduras; (6) that it was the intention of the parties that the contract was to be considered and construed as a contract under the laws of the Republic of Honduras; (7) that the contract was a valid contract under the laws of the Republic of Honduras; (8) that the defendants, through their agents, undertook to make an independent inspection as to the amount of acreage of pine timber and the quantity of pine timber on La Soledad prior to the execution of the contract; (9) that such an inspection as a reasonably prudent person, in the exercise of ordinary care on his part, would have made under the same or similar circumstances prior to the execution of the contract would have revealed to the person making such inspection that there was materially less than 32,000 acres of pine timber and materially less than 75 million board feet of lumber on La Soledad; (10) that the defendants suffered no damage by reason of the failure of the plaintiff to deliver to the defendants the 30 million board feet of timber contemplated by the contract.

After the verdict on the special issues, each party filed a motion for judgment. While such motions were being considered, the plaintiff was granted leave to file a trial amendment in support of the proof it had offered as to certain laws of the Republic of Honduras. The district court, under the authority of Liechti v. Roche, 5 Cir., 198 F.2d 174, treated that part of the jury's verdict concerning the laws of Honduras as advisory only, and itself made findings of fact as to certain of those laws, including a finding as to the validity of the contract. On the basis of such findings and of the verdict of the jury, the district court filed certain conclusions of law under which plaintiff's motion for judgment was granted.[1] Motion for new trial having been overruled, this appeal followed.

The appellants insist that of the laws of the Republic of Honduras

1. The findings and conclusions of law of the trial court were as follows:

"Findings of Fact and Conclusions of Law are filed herein for the reason that the proof of the law of the Republic of Honduras should be addressed to and the state of the law of the Republic of Honduras should be determined by the Court, the submission of such issues to the jury being treated as being the findings of an advisory jury.

"I

"Articles 602 and 605 of the Civil Code of the Republic of Honduras provide in substance that trees constructively severed from the land, as by a contract providing for their cutting and processing into lumber, are movables and personal property and are not immovables or real property.

"II

"Article 1348 of the Civil Code of the Republic of Honduras provides in substance that obligations of contracts have the force of the law and must be complied with irrespective of the form in which they are drawn or the method by which they are executed.

"III

"Article 1552 of the Civil Code of the Republic of Honduras provides in substance that contracts are valid if they contain the following elements: consent of the parties, certainty of the object of the contract, the reason for the obligation, and consideration.

"IV

"Article 1573 of the Civil Code of the Republic of Honduras provides in substance that the obligations of a contract must be complied with regardless of the form of the contract.

"V

"Article 1574 of the Civil Code of the Republic of Honduras provides in substance for the compelling of the execution of a contract in form contemplated for the execution of public documents even though such contract has not been executed in such form.

"VI

"Article 1576 of the Civil Code of the Republic of Honduras provides in substance that if the terms of a contract are clear and there is no doubt as to the in-

pleaded in the trial amendment filed by the plaintiff after verdict and included in the court's findings of fact, Article 1576 of the Civil Code of Honduras and Articles 325, 326 and 338 of the Civil Procedure Code of Honduras were not introduced in evidence. While it is true that the numbers of these particular articles were not referred to, the record shows that these codes were in the courtroom and were referred to and that the witnesses testified to the substance of such articles. The failure of the witnesses to call the number of the articles was not a material omission. The codes being before the court it was not concluded from making its own examination, nor from consulting the statutes for itself. Finney v. Guy, 189 U.S. 335, 342, 343, 23 S.Ct. 558, 47 L.Ed. 839; Eastern Building, etc., Association v. Williamson, 189 U.S. 122, 126, 127, 23 S.Ct. 527, 47 L.Ed. 735.

 Three expert witnesses had testified at length by deposition or on the trial as to the laws of Honduras, one

tention of the parties, such contract is enforceable and will be enforced.

"VII

"Articles 325, 326 and 338 of the Civil Procedure Code of the Republic of Honduras, relating to the translating of contracts into Spanish, the affixing of stamps on such contracts, the execution of such contracts before a Notary, are all matters purely procedural, and being only matters of procedure are in nowise necessary when a valid contract is being enforced in another country than the Republic of Honduras.

"VIII

"The contract between Empresas Hondurenas, S.A., and Daniel Lumber Company, the subject matter of this suit, under the laws of the Republic of Honduras related to rights in personal property and did not relate to rights in real property.

"IX

"The contract between Empresas Hondurenas, S.A., and Daniel Lumber Company, the subject matter of this suit, was a valid contract under the laws of the Republic of Honduras at the time of its execution and is now a valid contract under said laws.

"Based upon the foregoing findings by the Court and the findings and verdict of the jury as filed herein, and the evidence introduced during the trial of this case, the Court files the following:

CONCLUSIONS OF LAW

"I

"The Court has jurisdiction of the parties and the subject matter.

"II

"Under the terms and provisions of the contract between Empresas Hondurenas, S. A., and Daniel Lumber Company, the subject matter of this suit, plaintiff, Empresas Hondurenas, S.A., is entitled to recover judgment against defendant Daniel Lumber Company as follows:

| | |
|---|---|
| (a) 15% of the sale price of 1,433,275 board feet during the first contract year, such sale price being $72,087.94— | $10,813.19 |
| (b) Balance of 6,000,000 board feet minimum for first contract year 4,566,725 board feet at $6.00 per thousand— | 27,400.35 |
| Total due for first contract year | $38,213.54 |
| Less credit paid at execution of the contract | 15,000.00 |
| | $23,213.54 |
| (c) Interest on said amount from May 1, 1949, to May 6, 1953 | 5,590.25 |
| (d) Amount due from sale of ties in second year of contract | 1,950.00 |
| (e) Interest on $1950.00 from February 1, 1950 to May 6, 1953 | 381.87 |
| Total | $31,135.66 |

"III

"All costs are adjudged against the defendants.

"It is hereby directed that judgment be entered herein in favor of the plaintiff, Empresas Hondurenas, S.A., against the defendants, Daniel Lumber Company, C. H. Daniel, R. W. Daniel and J. W. Daniel, jointly and severally, for the sum of $31,135.66 with interest thereon at the rate of 6% per annum from May 6, 1953, together with judgment for all costs."

called by the defendant and two at the instance of the plaintiff. Rule 15(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides in part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues." There was no error on the part of the district court in granting plaintiff leave to file the trial amendment after verdict and before judgment pleading the particular laws of the Republic of Honduras. We are in agreement with the findings of the district court as to the state of the law of the Republic of Honduras and with its finding that the contract, the subject matter of this suit, was a valid contract under the laws of Honduras.

The appellants insist, however, that performance of the contract was rendered impossible because the plaintiff corporation did not own the amount of pine timber contemplated by the contract. As has been stated, the jury found on special issues that there was not 30,000,000 board feet of standing pine timber on the tract of land known as La Soledad, but that the defendants suffered no damage by reason of the failure of the plaintiff corporation to deliver to the defendants the 30,000,000 board feet of pine timber contemplated by the contract. The jury further found that the defendants undertook to make an independent inspection as to the quantity of the pine timber on La Soledad prior to the execution of the contract, and that such inspection should have revealed that there was materially less than 32,000 acres of pine timber and materially less than 75,000,000 board feet of lumber on the place. One of the defendants, Charles H. Daniel, Jr., testified that as early as February, 1948, he had learned the approximate extent of the timber.

With such knowledge, the mill was placed in operation in May, 1948, and continued to operate until February or early March of 1949. No complaint of any kind regarding a shortage of timber was made by the defendants until 18 months after they had gone on the property and started cutting the timber. One of the expert witnesses, Guillerno Moncada, testified: " * * * in the event there is much less pine timber on there than 30,000,000 feet of timber, would that be an impossibility under that statute? Answer: No, Sir."

■ Once the foreign statutes had been proved, the district court had the duty of construing them for itself with the aid of but without being bound by the opinions of the expert witnesses. Finney v. Guy, supra; Eastern Building, etc., Association v. Williamson, supra; Liechti v. Roche, supra. The court's construction of the foreign statutes might in its own good judgment be guided by the logic and reasoning underlying similar rules of the common law. At common law mistake makes a contract voidable by either party only "if enforcement of it would be materially more onerous to him than it would have been had the fact been as the parties believed it to be." 2 A.L.I. Restatement, Contracts, Sec. 502, p. 961. In the present case, as has been stated, the jury found as a fact that the defendants were not damaged in any way because of the fact that the timber on the land did not contain as much as 30,000,000 board feet of lumber as had been assumed by the parties. Further, the defendants after ascertaining the shortage of timber, received most of what was available and thereby waived the condition that the entire contract be fully performed. 46 Am.Jur., Sales, Sec. 220.

■ The plaintiff corporation waived any right it might have to recover for the second year, because it stated the proof was not clear as to the amount of timber which remained for cutting during the second year. It does not appear that the defendants urged as a defense that the timber on the land contained less than 6,000,000 board feet

of lumber, the minimum which the partnership was obligated to cut during the first year, and which was the basis of the judgment in this case. No issue was submitted to the jury on this point. The defendants' mill was placed in operation in May, 1948, and continued operation until February or early March of 1949. It had a capacity of 30,000 to 40,000 board feet of lumber a day, and normally ran about 20 to 25 days a month. One of the defendants' witnesses, Beall, testified that at the time the defendants quit cutting there was between a million and a quarter and a million and a half board feet of timber on the land. The testimony went to show that the defendants, prior to the execution of the contract, inspected the timber and represented to the officers of the plaintiff corporation that there was from 75,000,000 to 80,000,000 board feet of lumber in the pine timber on the land. The contract contemplated that the defendant partnership should keep books to which the plaintiff corporation should have access for the purpose of carrying out the provisions of the contract, and that the partnership would pay to the corporation all sums due on lumber sold at the end of each three months during the term of the contract. The only record of lumber which the defendants admitted had been sold was contained in a single sheet of paper which forms the basis for the figures in the court's judgment. Other than the initial payment of $15,000, the defendant partnership never made any payment to the plaintiff corporation, nor did they make any quarterly report. The responsibility for the failure to have an accurate record of the amount of timber cut and of the timber remaining on the land rests primarily on the defendants. Under the circumstances of this case, we are of the opinion that the court did not err in assuming from the evidence that there was more than the 6,000,000 board feet of lumber in the timber on the land and in rendering judgment against the defendants based on their minimum obligation for the first year.

The appellants strenuously urge that the district court erred in admitting the testimony of the witness, Frix, as to the quantity of timber cut by the defendants because that testimony was hearsay and was admittedly based on statements of the native helpers of Frix in checking and measuring the stumps of the trees, counting all stumps both old and new, making a further count of the old stumps alone, and making a subtraction in arriving at the stumps resulting from the defendants' cutting. Under Frix's testimony, the first count of the stumps, both old and new, disclosed 9,966,942 board feet of lumber cut from the land, and the second count of the old stumps alone disclosed 646,713 board feet of lumber that had been cut, leaving the amount for which the defendants were accountable as 9,320,229 board feet of lumber. If it be conceded that the testimony of Frix was inadmissible, it seems to us that the admission of such testimony was harmless. The jury apparently paid little or no attention to that testimony, because it found the approximate amount of timber cut from the land to contain 4,000,000 board feet, less than one-half of that testified to by Frix; and, even if the jury considered Frix's testimony in making their finding of 4,000,000 board feet, such finding did not enter into the calculations of the court and the judgment of the court is in no way based thereon, but is based on the minimum obligation of the contract for the first year of operations.

We find no reversible error in the record and the judgment of the district court is

Affirmed.