58 CCPA

**MANNESMANN–MEER, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5359.**

United States Court of Customs and Patent Appeals.

Oct. 29, 1970.

Allerton deC. Tompkins, New York City, attorney of record, for appellant.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Urban S. Mulvehill, New York City, for the United States.

Before RICH, ALMOND, BALDWIN, and LANE, Judges, and McMANUS, Judge, Northern District of Iowa, sitting by designation.

LANE, Judge.

This appeal is from the decision and judgment of the Customs Court, First Division, Appellate Term, 62 Cust.Ct. 1023, A.R.D. 253 (1969), affirming the decision and judgment of the single judge sitting in reappraisement, 57 Cust. Ct. 697, R.D. 11243 (1966). We affirm.

As fully set forth in the trial court and Appellate Term opinions, the merchandise in question consists of several shipments of parts which when assembled comprise a press plant for making steel pipe. The total price, F. O. B. port of exportation, paid by appellant-importer was $793,091.[1] The issue which we find dispositive is whether the Customs Court erred in finding that appellant's evidence failed to prove that the price paid fairly reflected the market value of the merchandise (19 USC 1401a(f) (1) (B)), through which fact appellant sought to establish export value under 19 USC 1401a(b). The merchandise was appraised on the basis of constructed value under 19 USC 1401a(d), the use of which basis is permissible only if "neither the export value nor the United States value can be determined satisfactorily." 19 USC 1401a(a) (3).

Appellant introduced in evidence below an affidavit of the seller's director of sales, stating that the price charged was a "normal price for this type of equipment," that it included a normal markup of 15% over total costs and expenses for the production of the equipment, and that the seller's business was to sell this type of equipment throughout the world whenever there is a demand for it, in competition with other manufacturers in Germany and elsewhere. The affiant further stated that the seller's agents and resellers throughout the world receive the same price treatment whether or not related to the seller. It should be noted here that the seller owned sixty percent of the capital stock of appellant-importer and that the latter was a sole "selected purchaser" in the United States, within the meaning of 19 USC 1401a(f) (1). The affiant also stated that the shipment in question was the seller's "standard equipment only modified to meet customer's requirements," and that the price charged was, at the time of exportation, available to every reseller throughout the world. The affidavit appears to be appellant's only evidence on the issue of whether the price fairly reflected the market value. The

1. The proper amounts to be attributable to inland charges and parts of domestic origin in computing export value appear to be undisputed.

United States offered no contrary evidence.

Both the trial court and the Appellate Term found appellant's evidence insufficient on the issue stated, and we cannot say that their decisions were clearly contrary to the weight of the evidence. A close reading of the opinions below reveals two reasons for holding the evidence insufficient: (1) Under this court's holding in Brooks Paper Company v. United States, 40 CCPA 38, C.A.D. 495 (1952), the evidence presented, being in the form of conclusory statements on ultimate facts, cannot possibly overcome the presumption of correctness attaching to the appraiser's determination; and (2) apart from the rule of the *Brooks Paper* case, the evidence here is too incomplete to be persuasive against the presumption.

█ Appellant argues that the evidence submitted was not merely conclusory and, in the absence of contrary evidence, established the point in its favor. Appellant contends, and we agree, that there should be no hard and fast rule as to the proofs needed to establish that a price to a selected customer fairly reflects the market value. As pointed out by McCormick in his work on Evidence, there is no necessary significance in whether a given fact to be proved is "ultimate" or not, and the distinction between "facts" and "conclusions" is illusory; all testimony is based to some extent on unstated premises and hence is conclusory. McCormick on Evidence §§ 11, 12 (1954). It is eminently clear that the question of what evidence is sufficient to support a trier's finding that a presumption has been rebutted should not be decided on such artificial dichotomies as facts vs. conclusions, or ultimate facts vs. evidentiary facts. We do not view the *Brooks Paper* case as establishing a general rule that the presumption of correctness can never be overcome by testimony on ultimate facts. The strength of the evidence should be assessed in practical terms, considering such factors as completeness, adequacy of bases, and possible motives to deceive. This is precisely what the trial judge did as the second basis for her decision, after discussing and applying the rule of the *Brooks Paper* case, and her rationale was adopted by the Appellate Term.

The rationale applied by the trial judge was as follows: First, the appraiser's action is presumed correct. Inherent in the appraiser's use of constructed value under 19 USC 1401a(d) was the finding that export value could not be satisfactorily determined. See 19 USC 1401a(a) (3). The trial judge moved the presumption one step further, saying: "Here the presumption is that the appraiser found that sales price to the exporter's selected customer did not fairly reflect market value." This is not necessarily so. The appraiser's non-use of export value, while presumed correct, could have been based on a finding that any one of the elements of export value was lacking. As far as we can determine from the record, the appraiser's reason for not using export value was not stated. However, it was assumed below that the only matter ever in dispute was the question of fair reflection of market value, and the above-quoted extension of the presumption has not been challenged. We shall therefore proceed on the premise that there was, in this case, a legal presumption that the price paid by appellant did not fairly reflect the market value. Appellant's burden below was at least to overcome the presumption. In a practical evaluation of appellant's evidence, the tribunals below found the following weaknesses, among others, therein:

1. There was no evidence of specific transactions from which the court could judge the correctness of affiant's statement that the price charged was "normal."

2. There was no specific evidence as to how competitive conditions affected the price charged.

3. There was no evidence of the extent to which modification to suit customer requirements affected the price.

These weaknesses were properly considered below as affecting the weight to be given to appellant's evidence. Undoubtedly, what troubled the Customs Court tribunals most was the obvious invitation to deceit which would be created by a holding that fair reflection of market value was established by such a brief, undetailed, incomplete affidavit as was presented by appellant. Both the trial judge and the Appellate Term concluded that the presumption had not been overcome. We think this conclusion was reasonable and not contrary to the weight of the evidence. Accordingly, the judgment of the Appellate Term is affirmed.

Affirmed.