VICTOR MANUFACTURING AND GASKET COMPANY *v.* UNITED STATES

Court Nos. R67/15496, etc.

(Decided March 5, 1975)

*Baker & McKenzie (William D. Outman, II,* of counsel) for the plaintiff.
*Carla A. Hills,* Assistant Attorney General *(Bernard J. Babb,* trial attorney), for the defendant.

MALETZ, Judge: These 14 consolidated appeals for reappraisement involve the proper dutiable value of various types of automotive gaskets which were manufactured and exported from Denmark by Victor Royal Ltd. Manufacturing & Gasket Company of

181

Copenhagen, Denmark (Victor Royal) during a period from April 1965 through May 1967 and entered at the port of Chicago. The merchandise was on the so-called Final List, T.D. 54521, and was appraised by the District Director of Customs on the basis of foreign value as defined in section 402a(c) of the Tariff Act of 1930 as amended by the Customs Simplification Act of 1956 (19 U.S.C. § 1402(c)(1964)). The values found by the District Director were equal to Victor Royal's invoice unit prices to plaintiff, plus 84.1 percent, less 3 percent, plus packing. Such advance in values resulted from the disallowance of certain quantity discounts that Victor Royal granted plaintiff.

Plaintiff claims the statutory basis of appraisement is also foreign value but contends that the correct unit values are those which are contained in Victor Royal's price lists covering certain home market sales in Denmark.

Section 402a of the Tariff Act of 1930, 46 Stat. 708, as amended and renumbered by the Customs Simplification Act of 1956, 70 Stat. 943, 946, reads in part as follows:[1]

(a) BASIS.—For the purposes of this Act the value of imported articles designated by the Secretary of the Treasury as provided for in section 6(a) of the Customs Simplification Act of 1956 shall be—

(1) The foreign value or the export value, whichever is higher;

\*       \*       \*       \*       \*       \*       \*

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to plac-

---

[1] The Customs Simplification Act of 1956 added a new valuation section to the Tariff Act of 1930 which new section was designated as "Sec. 402. Value." The old valuation section of the Tariff Act of 1930 was redesignated as "Sec. 402a. Value (Alternative)" and continued to apply to the appraisement of all articles specified in the Final List, T.D. 54521. See American Importers Association, *United States Customs Valuation Procedure*, p. 5 (1958); Sturm, *A Manual of Customs Law*, pp. 40-2 (1974).

ing the merchandise in condition, packed ready for shipment to the United States.

Against this background, the principal issue is whether plaintiff has established that its claimed values on the basis of foreign value, as defined in section 402a(c), are correct.

## I

We consider first the record which consists of the testimony of two witnesses called by plaintiff and six exhibits introduced by plaintiff. Defendant called no witnesses and introduced no exhibits. The record, it is to be added, is best understood by summarizing the testimony of the two witnesses and the exhibits to which their testimony related.

Plaintiff's first witness was John F. Teigland, staff attorney for the Dana Corporation of Toledo, Ohio, which in August 1966 acquired 100 percent of the stock of the plaintiff-importer, Victor Manufacturing and Gasket Company. Mr. Teigland testified that in April and May 1967 he met with a Mr. Stolpe, an Import Specialist with the Bureau of Customs in Chicago; that Mr. Stolpe told him that the value advance was based on the disallowance of discounts being offered to plaintiff that were not available in the home market, Denmark; and that Mr. Stolpe showed him a Victor Royal price list (identified in the record as Pl. Ex. 1) on which the discounts in question appeared. Subsequent to these meetings, Mr. Teigland prepared a computation (Pl. Ex. 2) explaining the method of arriving at the value advance of 84.1 percent.

Allan Nielsen, Vice President of Victor Royal, was called as plaintiff's second witness. He testified that Victor Royal's principal business was to manufacture and sell gaskets, 60 percent of which were automotive gaskets; that 51 percent of the company's stock was owned by the Harald Nielsen Foundation and 49 percent by plaintiff; and that plaintiff did not maintain an active management position in Victor Royal. He added that he was familiar with Victor Royal's pricing policy; that he was responsible for Victor Royal sales in and outside Denmark; and that its sales were divided about 50–50 between domestic sales in Denmark and export sales.

In Denmark, Mr. Nielsen testified, Victor Royal had two types of customers for automotive gaskets; one type consisted of so-called non-franchised or replacement part wholesalers (hereafter referred to as "replacement part wholesalers"); the other type consisted of the marketing organizations of automobile manufacturers such as the Ford Motor Company and General Motors (which marketing organizations are hereafter referred to as "automobile companies") that marketed the automotive gaskets through their franchised dealers.

According to the witness, there was a distinction in the way Victor Royal sold to these two types of customers in Denmark—the distinction being in quantity and pricing. In this connection, the witness testified that individual sales to automobile companies were made in larger quantities than sales to replacement part wholesalers. Further he stated that automobile companies purchased gaskets from Victor Royal at prices 10 to 20 percent less than the home market prices to replacement part wholesalers, and that in the aggregate, value-wise, Victor Royal's total home market sales of automotive gaskets were divided about equally between sales to replacement part wholesalers and to automobile companies.

Mr. Nielsen testified that in March 1965 he had prepared a price list (Pl. Ex. 1) which was utilized for sales to plaintiff; that this price list set forth (among other things) the discounts allowable on any individual order exceeding 100,000 Danish kroner; that there was no purchaser in Denmark who ever placed an individual order for automotive gaskets in a value exceeding 100,000 kroner; and that although this price list was ostensibly a home market price list for Denmark, it was never used in Denmark because of the size of the discounts involved.

Mr. Nielsen further testified that in July 1964, Victor Royal prepared a price list (Pl. Ex. 3) that was used in connection with sales of automotive gaskets to replacement part wholesalers in Denmark until the 1965 price list was issued.[2] He said that this 1964 price list was controlling in domestic purchases during the period of its validity; that the price list set forth quantity codes identified by the letters "A," "B," or "C"; that the prices at which gaskets were offered for sale varied as to quantities purchased; and that during the period of validity of the 1964 price list the greatest number of individual sales at wholesale were made at quantity level "B" meaning 10 to 24 units.

Mr. Nielsen testified that the 1965 price list (Pl. Ex. 4) was issued September 15, 1965 and that it was used in effecting sales to replacement part wholesalers in Denmark during the period of its validity. Mr. Nielsen stated that the 1965 price list also contained quantity codes identified by the numbers "1," "10," and "50" and explained that the first number meant quantities from 1 to 9, the second meant quantities from 10 to 49, and the third, quantities of 50 and more. During the period of validity of the 1965 price list, Nielsen indicated that the greatest number of sales in the Danish home market were in quantities of 10 to 49 units.

Effective June 15, 1966, Mr. Nielsen testified that Victor Royal issued the next successive price list (Pl. Ex. 5) which was controlling

---

[2] The 1964, 1965 and 1966 price lists which are discussed in this opinion were not used in Victor Royal's sales to automobile companies in Denmark.

in sales made by Victor Royal to replacement part wholesalers in Denmark during the period of its validity in the same respect as was the case with the previously effective price list.

The price lists (Pl. Exs. 3, 4 and 5) claimed by the plaintiff to be controlling in determining the per unit values of the automotive gaskets here in issue each identify the individual gasket types by Victor Royal part number, correlate the Danish home market sales prices to such part number, and set forth the per unit values in Danish kroner.

Finally, the witness Nielsen testified that Victor Royal offered gaskets to plaintiff at a price lower than it offered them to domestic wholesalers in Denmark; that Victor Royal sold to other companies in the United States besides plaintiff; and that the prices at which Victor Royal sold gaskets for export to the United States were lower than domestic prices in Denmark.

## II

Turning now to the legal aspects, it is fundamental that plaintiff has a twofold burden, first to prove the District Director's appraisement erroneous and second to establish the correctness of its claimed values. For the reasons that follow, it must be concluded that plaintiff has failed to establish the correctness of its claimed values and hence the appraised values must be affirmed.

Section 402a(1) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, requires that the dutiable value of imported merchandise on the Final List shall be foreign value or export value, whichever is higher. In regard to valuation under this section, it is of course basic that the District Director's appraisement is presumptively correct. See 28 U.S.C. § 2633 (1964). And it is equally basic that the District Director is presumed to have found every fact necessary to sustain his appraisement. With these considerations in mind, it is apparent that in finding an appraised value for the imported merchandise on the basis of foreign value, it is presumed (1) that the appraised value thus determined by the District Director is correct; and (2) that the District Director found either that the value he deemed to be the correct dutiable value was higher than the export value or that there was no export value. This presumption does not mean, however, that plaintiff, assuming *arguendo* that it is successful in establishing that the appraised foreign value is erroneous, is relieved of the necessity of proving either that its claimed value was higher than export value or that there was no export value. To the contrary, in claiming a foreign value different from the appraised value, plaintiff is required to prove either that its claimed value was higher than the export value for such or similar merchandise, or that no export value for such or similar merchandise

existed at the times of exportation. This is an essential part of plaintiff's affirmative burden of establishing that its claimed value is correct.[3]

This principle was clearly set forth in *United States* v. *Joseph Tanous*, 53 CCPA 129, C.A.D. 889 (1966) where our appellate tribunal pointed out (p. 133) that the basis for the appraised value having been proved erroneous, the importer's "burden of then proving the correct dutiable value extends to both export and foreign value in view of section 402(a)(1) requiring a choice between 'whichever is higher.' "

The appellate court then continued (ibid.):

> The statutory language of sections 402 (a), (c), and (d) of the Tariff Act of 1930, as amended, supra, requires that a determination be made as to the presence or absence of foreign and export value in order to ascertain the dutiable value of imported merchandise. Each value must be determined independently of the other, and each separately considered as to both such or similar merchandise. Once the two values as defined in the statute are determined, or the absence of one of them, the selection of the higher value, or the existent value, is mandatory. *Meadows, Wye & Co.* v. *United States*, 17 CCPA 36, T.D. 43324; *United States,* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T.D. 42714. [Emphasis in original omitted.]

To similar effect is the following excerpt from Sturm, *A Manual of Customs Law* (1974), p. 109:

> Each value [foreign and export] must be determined independently of the other and each separately considered as to both such and similar merchandise. Once the two values are determined, or one is found to be absent, the selection of the higher value, or the existent one, is mandatory. Within the confines of each definition it is necessary to determine first whether there is a value for such merchandise, and, if not, whether there is a value for similar merchandise. *Nichols & Company, Inc.* v. *United States*, 59 CCPA 67, C.A.D. 1041, 454 F. 2d 1183 (1972). The higher foreign

---

[3] The following example will help illustrate why the foregoing is so. To start with, it is assumed that the District Director appraised imported merchandise on the basis of foreign value at $25.00 per unit. It follows from this that not only is $25.00 presumed to be the correct dutiable value, it is also presumed, since foreign value was the basis of appraisement, that the $25.00 appraised value either was higher than the export value or that there was no export value. It is next assumed that plaintiff claims that foreign value is the proper basis of appraisement but that the correct dutiable value on that basis is $15.00 per unit. In this circumstance, it is manifest that the District Director's appraisement at *$25.00* per unit does not give rise to any presumption that the *$15.00* per unit claimed value either was higher than the export value or that there was no export value. Rather, it is part of plaintiff's affirmative burden to establish that its $15.00 per unit claimed value is correct.

On a related matter, plaintiff indicates in its brief (p. 12) that since the parties agree that the merchandise in issue is included on the Final List, it follows that foreign value is the proper basis of appraisement. This, however, is quite incorrect. For the fact that merchandise is on the Final List means only that the *old* valuation section of the Tariff Act of 1930 will continue to apply to the appraisement of that merchandise and under that section either foreign value or export value, whichever is higher (or in the appropriate case, United States value, cost of production, or American selling price), is the proper basis of appraisement. See note 1, *supra*.

or export value, whether for such or similar merchandise prevails. *United States* v. *Joseph Tanous*, 53 CCPA 129, 133, C.A.D. 889 (1966).

As applied to the present case, it must be concluded that plaintiff has not satisfied the statutory requirements of demonstrating that its claimed foreign value for such merchandise sold in the home market was higher than the export value for such or similar merchandise, or that there was no export value for such or similar merchandise. It is clear that no evidence has been offered by plaintiff which would tend to establish that an export value for such or similar merchandise did not exist. Remaining then is the question of whether plaintiff has shown an export value for such or similar merchandise which was lower than its claimed foreign value. This plaintiff has failed to do.

In connection with the foregoing, the only proof offered by plaintiff regarding export value is the statement by the witness Nielsen that Victor Royal, the Danish exporter, sold *such* merchandise to the plaintiff and other purchasers for exportation to the United States at prices lower than the prices for home consumption in Denmark (R. 96–99). The weight to be given this evidence must be "assessed in practical terms, considering such factors as completeness, adequacy of bases, and possible motives to deceive." *Mannesmann-Meer, Inc.* v. *United States*, 58 CCPA 6, 8, C.A.D. 995, 433 F. 2d 829, 831 (1970). Measured by this standard, it must be concluded that the foregoing testimony is entitled to little weight. For there is a complete absence from the record of any specific transaction between Victor Royal and a purchaser in the United States, other than plaintiff. Likewise absent from the record is any evidence of what price or prices Victor Royal charged such a purchaser. In light of these considerations, the statement by plaintiff's witness that the prices for export were lower than those in the home market without evidence of specific transactions or prices cannot be a basis for the court's concluding that the export prices for such merchandise were lower.

What is more, the record is totally devoid of any evidence to establish whether an export value existed for such merchandise at the so-called lower price, i.e., that such merchandise was freely offered to all purchasers in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at prices lower than home market prices. Accordingly, plaintiff has not proved either that the export value was lower than the claimed foreign value for such merchandise or that there was absent an export value for such merchandise.

Further, with respect to similar merchandise manufactured either by the present exporter or other manufacturers in Denmark, there is

no evidence whatsoever to show either that there was no export value for similar merchandise, or that the prices for similar merchandise for exportation to the United States were lower than the claimed value which is based on foreign value.

In sum, the court, without considering whether or not the appraised values are correct, concludes that plaintiff has failed to prove that its claimed values are correct. Hence the appeals for reappraisement must be dismissed and the appraised values affirmed. Judgment will be entered accordingly.