(A.R.D. 324)

ROSS GLOVE COMPANY v. UNITED STATES

Reappraisement R68/11664

FIRST DIVISION, APPELLATE TERM

(Decided March 3, 1978)

Law offices *Treumann; Barnes, Richardson & Colburn*, associate counsel; *Walter Treumann, Mark F. Sheridan* and *Joseph Schwartz* of counsel; for the appellant.

*Barbara Allen Babcock*, Assistant Attorney General (*Wesley K. Caine* and *William Atkins*, trial attorneys), for the appellee.

Before RE, Chief Judge, WATSON and MALETZ, Judges

WATSON, Judge: This is one of the last cases to be decided under a former procedure of this court by which decisions of a single judge

regarding the value of merchandise were reviewed by a panel of three other judges of the same tribunal.[1]

In this instance the question was whether certain gloves imported from the Philippines were "Philippine articles", a circumstance which would entitle them to a reduced rate of duty under a trade agreement in effect between the United States and the Republic of the Philippines.[2] At the heart of the dispute was the question of the value of the gloves' rabbit fur linings, which originated in Belgium and which could not have a value greater than 20% of the value of the gloves if the gloves were to remain Philippine articles within the meaning of the trade agreement.

[1] 28 U.S.C. § 2636(a).

[2] Philippine Trade Agreement Revision Act of 1955, 69 Stat. 413–24:

SEC. 201 AUTHORITY TO REVISE THE 1946 AGREEMENT.

In order to make revisions proposed by the delegations of the Governments of the United States of America and of the Republic of the Philippines in the "Final Act of Negotiations Relative to Revision of the 1946 Trade Agreement Between the United States of America and the Republic of the Philippines" signed at Washington, December 15, 1954, as corrected, the President of the United States is hereby authorized to enter into an agreement with the President of the Philippines revising the executive agreement concerning trade and related matters entered into by the President of the United States and the President of the Philippines on July 4, 1946, so that such executive agreement, as so revised, will read as follows:

"AGREEMENT BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF THE PHILIPPINES CONCERNING TRADE AND RELATED MATTERS DURING A TRANSITIONAL PERIOD FOLLOWING THE INSTITUTION OF PHILIPPINE INDEPENDENCE, SIGNED AT MANILA ON JULY 4, 1946, AS REVISED

\*    \*    \*    \*    \*    \*    \*

"ARTICLE I

\*    \*    \*    \*    \*    \*    \*

"2. The ordinary customs duty to be collected on Philippine articles as defined in Subparagraph (f) of Paragraph 1 of the Protocol, other than those specified in the Schedule to Paragraph 2 of Article II, which during such portions of such period are entered, or withdrawn from warehouse, in the United States for consumption, shall be determined by applying the following percentages of the United States duty as defined in Subparagraph (g) of Paragraph 1 of the Protocol:

\*    \*    \*    \*    \*    \*    \*

"(c) During the period from January 1, 1962, to December 31, 1964, both dates inclusive, twenty per centum.

\*    \*    \*    \*    \*    \*    \*

"PROTOCOL TO ACCOMPANY THE AGREEMENT BETWEEN THE UNITED STATES OF AMERICA AND THE REPUBLIC OF THE PHILIPPINES CONCERNING TRADE AND RELATED MATTERS DURING A TRANSITIONAL PERIOD FOLLOWING THE INSTITUTION OF PHILIPPINE INDEPENDENCE, SIGNED AT MANILA ON JULY 4, 1946, AS REVISED

\*    \*    \*    \*    \*    \*    \*

"1. For the purpose of the Agreement—

\*    \*    \*    \*    \*    \*    \*

"(f) The term 'Philippine article' means an article which is the product of the Philippines, unless, in the case of an article produced with the use of materials imported into the Philippines from any foreign country (except the United States) the aggregate value of such imported materials at the time of importation into the Philippines was more than twenty per centum of the value of the article imported into the United States, the value of such article to be determined in accordance with, and as of the time provided by, the customs laws of the United States in effect at the time of importation of such article. As used in this Subparagraph the term 'value', when used in reference to a material imported into the Philippines, includes the value of the material ascertained under the customs laws of the Philippines in effect at the time of importation into the Philippines, and, if not included in such value, the cost of bringing the material to the Philippines, but does not include the cost of landing it at the port of importation, or customs duties collected in the Philippines. \* \* \*"

\*    \*    \*    \*    \*    \*    \*

The single judge found the appellant had failed to satisfy its burden of proving the value of the linings under Philippine law; in particular determining a failure to prove the Belgian linings were sold for exportation to the Philippines and a failure to prove the linings were freely sold by the Belgian manufacturer at the claimed price of $4.82 per dozen pairs.

Appellant asserts the trial judge erred in reaching the above conclusions, in allegedly not applying the relevant Philippine law and in excluding evidence of a sales transaction between appellant and other Belgian manufacturers of rabbit fur linings.

As noted, the valuation of the fur linings is to be accomplished under Philippine law.[3] That law provides for duty to be assessed on the market value or price at which the same, like or similar article is freely offered for sale in the principal markets of the exporting country for exportation to the Philippines.

The trial judge was correct in finding a failure of proof that this merchandise was sold for exportation to the Philippines. Although he emphasized the absence of any mention of the Philippines in the contract of sale between Destelbergen, the seller, and appellant, we do not take this as an indication that the required proof must come from the contract or invoice. In fact, it could well come from another source such as a witness associated with the buyer.

However in this instance, in the confusion engendered by the contract of sale and the provisions for handling of the invoice, it behooved appellant's witness Ross to go beyond the simple declaration that the linings bought from Destelbergen were always shipped to the Philippines or that the merchandise did in fact arrive in the Philippines.

The contract of sale was between Destelbergen and appellant, Ross Glove Company of Sheboygan, Wisconsin (Ross Sheboygan). It provided for a down payment by Ross Sheboygan, the sending of invoices to Carla Trading Corporation, Ltd. in the Bahamas with

---

[3] Tariff and Customs Code of the Philippines, Republic Act No. 1937.

SEC. 201. *Basis of Dutiable Value.*—Whenever an imported article is subject to an *ad valorem* rate of duty, the duty shall be assessed upon the market value or price at which, at the time of exportation, the same, like or similar article is freely offered for sale in the principal markets of the exporting country for exportation to the Philippines, in the usual wholesale quantities and in the ordinary course of trade (excluding internal excise taxes to be remitted or rebated), plus ordinary expenses prior and incidental to the lading of such article on board the vessel or aircraft at the port of export (including taxes or duties, if any) and freight paid as well as insurance premium paid covering the transportation of such article to the port of entry in the Philippines.

When the value of the article cannot be ascertained in accordance with the preceding paragraph, the value shall be the domestic wholesale market value or selling price of the same, like or similar imported article in the principal market of the Philippines on the date of exportation of the article under appraisement, in the usual wholesale quantities and in the ordinary course of trade, minus the import duty and other taxes as well as a commission not exceeding six *per centum* if any has been paid or contracted to be paid on goods secured otherwise than by purchase, and profits not to exceed eight *per centum* and a reasonable allowance for general expenses not to exceed eight *per centum* on purchased goods, and all other expenses incidental to the delivery from the port of importation to the principal market in the Philippines.

copies to Ross Sheboygan, and delivery of the merchandise to a forwarding firm in Antwerp subject to the disposition of Ross Sheboygan. In the face of the plausible inference that shipment to the Philippines was entirely the work of appellant concerning which the seller had no knowledge, it would be reasonable to require appellant to produce evidence from which it could be inferred the seller made the sale for exportation to the Philippines.

Appellant cites its expert witness on Philippine law, Mr. Bito, for the proposition that a sale is for exportation to the Philippines if the goods are exported to the Philippines. This was not his testimony and ignores the fact goods may be shipped to places that are not within the contemplation of the seller. It is therefore not the fact of shipment to, or arrival in, the Philippines which is paramount but the fact the Philippines was the seller's contemplated destination for the merchandise.

Consequently, appellant's meticulous tracing of the shipment from Belgium to its bonded entry in the Philippines could not provide proof which must come from evidence relating to the sale and the intentions with which it was made, namely that it was made for exportation to the Philippines within the meaning of the Philippine law.

In sum, as elementary as proof of this point seems and as easily proven as it ordinarily ought to be, it is lacking in the somewhat tangled circumstances of this case. The trial judge was correct in pointing this out.

The trial judge was also correct in concluding appellant failed to prove the fur linings were freely sold by Destelbergen within the meaning of the Philippine statute. Interpretation of the Philippine law by reference to the similar United States law and cases decided thereunder was proper. *Daniel Lumber Co.* v. *Empresas Hondurenas, S.A.*, 215 F. 2d 465, 470 (5th Cir. 1954). See, for example, *Dunlap, et al.* v. *United States*, 43 CCPA 159, C.A.D. 624 (1956); *Veolay, Inc., J. E. Bernard & Co., Inc.* v. *United States*, 23 CCPA 101, T.D. 47766 (1935), *cert. denied*, 297 U.S. 711 (1935). There was no proof that Philippine law differed from United States law to any significant extent, certainly not to the extent of deriving an export value solely from the transaction in dispute or reaching a conclusion as to whether the same or similar merchandise was freely sold, only from the testimony of a buyer who did not display a familiarity with the overall practices of the seller.

In this respect, moreover, the trial judge was not bound by the expert witness' ultimate conclusions as to the value of these linings under Philippine law. That was a question for the judge to decide. *Finney* v. *Guy*, 189 U.S. 335 (1903). In addition, the witness' conclusion was at odds with the underlying analytical factors he expressed.

He clearly stated that a determination that merchandise was "freely sold" would depend on proof that all who wanted to purchase could purchase; a factor which is evidently the same in Philippine law as in United States law. *F. B. Vandergrift & Co., Inc.* v. *United States*, 56 CCPA 105, C.A.D. 962, 410 F. 2d 1259 (1969). See also, *Mannesmann-Meer, Inc.* v. *United States*, 58 CCPA 6, C.A.D. 995, 433 F. 2d 829 (1970). Yet proof of this point was strikingly absent from the testimony of Ross. In its place was testimony limited to appellant's business relationship with Destelbergen which could hardly be viewed as revealing Destelbergen's conduct with respect to other willing purchasers. In fact, Ross' testimony contained suggestions the claimed price was arrived at by offer and counteroffer between Destelbergen and Ross, a procedure which would be at variance with the existence of a single price at which Destelbergen was willing to sell to everyone for export to the Philippines.

We do not read the trial judge's decision as faulting appellant's proof only because it did not bring forward testimony from the seller, nor does the decision express an absolute requirement that proof the merchandise was freely sold must come from the seller. Such an unvarying requirement would be error because the well-informed buyer may have sufficient familiarity with a seller's business conduct to provide persuasive testimony. Here, however, Mr. Ross gave no sign of being sufficiently familiar with Destelbergen's selling conduct to support a finding its fur linings were "freely sold". In that context the trial judge's characterization of the need for evidence from the seller as a "must" was accurate.

On the subject of the price at which such or similar fur linings were freely sold, the only remaining evidence was of sales by the Belgian firm of Scaldis to the firm of M. Frenville & Co. However, those sales were not relevant because they were sales to a selected purchaser and were not for export to the Philippines.

Appellant attempted to introduce evidence of its purchases of fur linings from a third Belgian seller, the firm of Block. Appellant offered as proof a letter from Block offering linings at $4.95 for the months of April, May, June and July of 1962 and copies of invoices sent to Carla Trading Corporation, Ltd. allegedly showing shipments of linings in March and April of 1962. The trial judge excluded this evidence because the March invoice did not have the year 1962 written on it and because no proof of payment by appellant in the form of canceled checks was offered.

The exclusion of this evidence was error although it was harmless. It was error because it required a degree of perfection in the proof of a sales transaction beyond that which is reasonable. The invoice for March lacked the year but could be chronologically placed, by virtue

of the sequence of its bale numbers, with those on the April invoice (which did have the year 1962 on it), as well as by the direct testimony of the appellant's president. In addition, documentary proof of payment is not a prerequisite to the admission of other evidence as to the occurrence of a transaction. Whatever defects may be discerned in the evidence were not such as would render it inadmissible by any of the prevailing standards of admissibility although they might properly affect the weight given to it.

Although this exclusion was error, it was ultimately harmless because the tendency of the excluded evidence was to prove a lining price of $4.95 per dozen, higher than the freely offered lining price of $4.82 per dozen claimed to exist in the transaction at issue. The $4.95 price might itself lead to a total value of the linings which is still less than 20% of the total value of the gloves. However, it was appellant's burden, not to prove a variety of costs and values, all falling under the 20% limitation, but to prove first and foremost that its claimed $4.82 price was the price at which these linings were freely offered for sale. Proof of a higher price would not accomplish this.

For the above reasons the court makes the following findings of fact and reaches the following conclusions of law:

## Findings of Fact

1. That the merchandise in issue consists of 624 dozen pairs of fur-lined men's leather gloves which were manufactured in the Philippines with fur linings which were not of Philippine or United States origin, and which were exported from the Philippines to the United States on or about August 31, 1962;

2. That said merchandise was appraised upon entry at the port of Milwaukee, Wisconsin, at $25.77 per dozen pairs, net, packed, on the basis of constructed value as defined in section 402(d), Tariff Act of 1930, as amended, 19 U.S.C. § 1401a(d);

3. That the value of the said fur linings was not ascertained by the Philippine customs officials under the customs law of the Republic of the Philippines at the time of their importation into the Philippines; and

4. That a value for said fur linings was not subsequently proven, in accordance with said Philippine law, in the proceedings herein.

## Conclusions of Law

1. That appellant-importer has failed to establish that the merchandise in issue constitutes "Philippine article[s]" within the contemplation of paragraph 1(f) of the protocol to the revised executive trade agreement between the United States and the Philippines, as

authorized by section 201 of the Philippine Trade Agreement Revision Act of 1955, 69 Stat. 413, 424, 22 U.S.C. § 1372;

2. That constructed value as defined in section 402(d), Tariff Act of 1930, as amended, 19 U.S.C. § 1401a(d), is the proper basis for the determination of value of the subject merchandise;

3. That such constructed value is the appraised value herein; and

4. That the decision and judgment of the single judge, sitting in reappraisement, on remand, is affirmed.

Judgment will be entered accordingly.