Thomas B. HOOVER, Violet J. Byerly, D. Garrett Spear, James DiGiovannantonio, Elizabeth R. Keenan, Richard C. Arpin, Duane R. Carter, Lee E. Verzinskie, Individually and as representatives of the class described herein, Plaintiffs,

v.

Elizabeth Hanford DOLE, Secretary, Department of Transportation, Norfolk Southern Corporation and Consolidated Rail Corporation, Defendants.

Civ. A. No. 85–07.

Special Court,
Regional Rail Reorganization Act.

July 9, 1985.

Paul Shalita, Lawrence Goldberg, Goldberg, Dickman, Shalita & Tabas, P.C., Philadelphia, Pa., for plaintiffs Thomas B. Hoover, et al.

Richard K. Willard, Acting Asst. Atty. Gen., Civ. Div., Dennis G. Linder, Robert Damus, Richard Greenberg, Dept. of Justice, Washington, D.C. (of counsel: Kenneth Weinstein, Deputy Asst. Gen. Counsel, Dept. of Transp., Washington, D.C.; John M. Mason, Chief Counsel, Grady C. Cothen, Sp. Asst. to Chief Counsel, and S. Mark Lindsey, Sp. Counsel, Federal R.R. Admin., Dept. of Transp., Washington, D.C.), for defendant Elizabeth Hanford Dole, Secretary, Dept. of Transp.

J. Michael Hemmer, Charles A. Horsky, Charles G. Geyh, Covington and Burling, Washington, D.C., William C. Woolridge, Sr. Gen. Atty., Norfolk, Va., for defendant Norfolk Southern Corp.

Laurence Z. Shiekman, Deborah F. Cohen, Robert E. Heideck, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant Consol. Rail Corp.

Before GASCH, Presiding Judge, and BRYANT and WEINER, Judges.

## MEMORANDUM–ORDER

GASCH, Presiding Judge:

### I. BACKGROUND

Plaintiffs Thomas B. Hoover, Violet J. Byerly, D. Garrett Spear, James DiGiovannantonio, Elizabeth R. Keenan, Richard C.

Arpin, Duane R. Carter, and Lee E. Verzinskie, all present or former employees of defendant Consolidated Rail Corporation ("Conrail"), have brought this action [1] for declaratory and injunctive relief against Secretary of Transportation Elizabeth Hanford Dole, Conrail, and the Norfolk Southern Corporation ("Norfolk Southern"). Plaintiffs' complaint raises three contentions regarding the proposed sale of the interest of the United States in Conrail stock to Norfolk Southern that was recently announced by Secretary Dole and Norfolk Southern [2] and the mechanisms now in place for consideration of that proposal. First, plaintiffs contend that Secretary Dole has exceeded her statutory authority and taken plaintiffs' property in violation of the Fifth Amendment's Due Process Clause by entering into an agreement of intent to sell not only the government's interests in Conrail but the interests of an Employee Stock Ownership Program ("ESOP") established on behalf of Conrail employees as well. Complaint, ¶ 33. [3] Second, plaintiffs allege that the ESOP, as presently operated, provides no opportunity for independent representation of the interests of ESOP participants in any proceeding concerning the sale of the ESOP's interests in Conrail. *Id.* at ¶ 32. [4] Finally, the complaint alleges that Secretary Dole acted *ultra vires* by negotiating a sale to Norfolk Southern that did not require Norfolk Southern to purchase all of Conrail's assets. *Id.* at ¶ 34. [5]

Together with the complaint, plaintiffs filed an application for preliminary injunction. The motion for preliminary injunction asks the Court to enjoin Secretary Dole and Norfolk Southern "from negotiating the sale of the stock interest in Conrail held by the Conrail Employee[ ] Stock Option Plan" and to bar these defendants from "implementing" the Memorandum of Intent ("MOI") agreed to by Norfolk Southern and the government. Plaintiffs also ask the Court to appoint them to serve as independent trustees in the administration of the Conrail ESOP.

On June 10, 1985, defendants Dole and Norfolk Southern filed motions to dismiss asserting *inter alia* that the matter was not ripe for review and that plaintiffs had failed to state a claim on the merits. Together with these motions, defendants filed various documents concerning the Norfolk Southern proposal including the MOI. On

1. Plaintiffs seek to pursue this litigation as a class action on behalf of all "those persons who are former and present employees of Conrail[.]" Complaint, ¶ 2. Of course, an action "is not maintainable as a class suit merely because it is designated as such in the pleadings; whether it is or not depends upon the attending facts." 3B Moore's Federal Practice ¶ 23.02[2] at 23–89 (1982).

2. Section 1142 of the Northeast Rail Service Act of 1981 ("NRSA"), Pub.L. 97–35, 95 Stat. 357, 654 (Aug. 13, 1981), directed the Secretary to attempt to sell the interest of the United States in Conrail stock once the Board of Directors of the United States Railway Association determined that Conrail would be a profitable carrier.

3. Congress initially called for creation of the Conrail ESOP in Section 3 of the United States Railway Association Amendments Act of 1978, Pub.L. 95–565, 92 Stat. 2397 (Nov. 1, 1978). The legislation required that prior to establishment of the ESOP, Conrail have submitted a written plan to exempt those associated with the ESOP from "any fiduciary duty, responsibility or liability for the acquisition of, investment in, or retention of, any security or interest therein of [Conrail] or for any other transaction[.]"

Congress passed such a limit on liability in 1980 by adding subsection (8)(A) to Section 216(f) of the Regional Rail Reorganization Act of 1973, Pub.L. 93–236, 87 Stat. 985 (Jan. 2, 1974) ("3R Act"). *See* Pub.L. 96–254 § 118, 94 Stat. 399, 406 (May 30, 1980).

4. Plaintiffs allege that the committee managing the Conrail ESOP is appointed by Conrail's directors, who in turn are alleged to be selected by the Department of Transportation. Complaint, ¶ 32. The Complaint asks the Court to dismiss the current managers and appoint the putative class representatives to administer the ESOP.

5. According to plaintiffs, because there has been no finding that Conrail is not profitable, the Secretary is required by NRSA to sell Conrail as a single entity. Plaintiffs allege that the MOI violates this requirement by barring Norfolk Southern from retaining certain Conrail assets whose ownership by Norfolk Southern would, in the government's view, raise antitrust problems.

June 28, 1985, after hearing counsel for plaintiffs and defendants argue pending motions in open court, the Court advised counsel for plaintiffs that in light of the filing of these matters outside the pleadings, the Court would treat defendants' motions as motions for summary judgment instead of motions to dismiss.[6] Counsel for plaintiffs then informed the Court that plaintiffs would file any additional materials they wished to have considered in connection with the motions for summary judgment by July 3, 1985. Plaintiffs' counsel notified the Executive Attorney of this Court on July 3 that plaintiffs had elected not to submit any additional materials.

After reviewing the record herein, the Court finds, for the reasons discussed below, that summary judgment is warranted.

## II. DISCUSSION

### A. *Ripeness*

The primary argument raised by defendants Dole and Norfolk Southern in support of the motions for summary judgment is the contention that the actions complained of are not ripe for review.

■ Federal courts are "without power to give advisory opinions" or to "decide abstract, hypothetical or contingent questions[.]" *Alabama State Federation of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725 (1945). A court deciding whether a controversy is ripe for review must evaluate "both the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

■ In response to defendants' ripeness challenge, plaintiffs concede that significant aspects of the complaint are not ripe for review [7] but insist that the Court does have before it three issues that are justiciable: 1) whether or not, merely by discussing possible terms for the sale of the ESOP stock, Secretary Dole has exceeded her statutory authority; 2) whether or not plaintiffs are entitled to appointment of an independent trustee to represent the interests of the ESOP; and 3) whether the ESOP beneficiaries would have "claims against the Government to the extent that they are under compensated" if the sale to Norfolk Southern is consummated. Plaintiffs' Brief in Further Support of Request for Affirmative Relief and Contra Defendants' Motion to Dismiss ("Plaintiffs' Opposition") at 6. As discussed *infra,* the last of these issues is not ripe for review.

As plaintiffs now characterize the complaint, they seek a declaratory judgment on the following question: "if the ESOP stock is involuntarily taken, do the ESOP beneficiaries have Tucker Act [8] claims." Plaintiffs' Opposition at 7. In arguing that this issue is justiciable, plaintiffs rely on *Dames & Moore v. Regan*, 453 U.S. 654, 689, 101 S.Ct. 2972, 2991, 69 L.Ed.2d 918 (1981).

---

**6.** Federal Rule of Civil Procedure 12(b) provides that: "If on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See, e.g., Gordon v. National Youth Work Alliance,* 675 F.2d 356, 361 (D.C. Cir.1982); *Woods v. Dugan,* 660 F.2d 379, 380–81 (8th Cir.1981).

**7.** During oral argument, plaintiffs' counsel conceded that plaintiffs' claim that Secretary Dole had exceeded her authority by negotiating an agreement with Norfolk Southern that allegedly would not require Norfolk Southern to purchase Conrail as a "single entity" was not yet ripe. Counsel also stipulated that any challenges based on the actual sale of the ESOP stock were not yet ripe as any sale remains contingent on a number of events including enactment of legislation.

**8.** The Tucker Act confers jurisdiction on the Court of Claims:

[T]o render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon an express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. 28 U.S.C. § 1491.

Even a cursory review of *Dames & Moore,* however, demonstrates that the case at bar is distinguishable.[9] In contrast to the situation in *Dames & Moore,* where the President had already issued an Executive Order suspending the plaintiff's claim, in this action there is no governmental action now in effect [10] which can be reviewed to consider what remedies ultimately may be available to plaintiffs. Congress has not even begun to consider the mechanism for valuation of the ESOP's interests or the nature of any legislative protections it may wish to afford to ESOP beneficiaries.[11] Thus, unlike the *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 126, 95 S.Ct. 335, 350, 42 L.Ed.2d 320 (1974), there is no basis for the Court to consider whether Congress has "withdrawn the Tucker Act grant of jurisdiction to the Court of Claims" since legislation that would need to be considered in this regard has not yet been enacted.[12]

The second factor to be considered in resolving the question of ripeness, the hardship to the parties of withholding court consideration, also counsels against deciding the Tucker Act issue at this time. In

**9.** The action in *Dames & Moore* was brought by a plaintiff who had already obtained prejudgment attachments and a subsequent judgment against Iranian defendants but was barred from executing the judgment pursuant to a presidential Executive Order issued to implement the terms of the agreement between Iran and the United States for release of American hostages held in Iran and certain Iranian assets held in the United States. *Dames & Moore,* 453 U.S. at 665–67, 101 S.Ct. at 2979–80. The Executive Order in question provided for all Iranian claims to be "suspended" pending their presentation to an Iran-United States Claims Tribunal with the suspension terminating if the Claims Tribunal determined that it had no jurisdiction over the claim. *Id.* at 666, 101 S.Ct. at 2979. Although the *Dames & Moore* Court reached the question of whether the plaintiff would have a remedy under the Tucker Act, it did so in light of "the President's actions," *i.e.,* actions that were already in effect—and the well-settled rule that "there must be at the time of taking 'reasonable, certain and adequate provision for obtaining compensation.'" *Id.* at 689, 101 S.Ct. at 2991 (citations omitted). In the action now before the Court there has not yet been any comparable governmental action.

**10.** By its terms, the MOI is not the all encompassing "definitive agreement" for the sale of Conrail that plaintiffs apparently envisioned in filing this action. To begin with, although the MOI anticipates that Norfolk Southern will purchase the Conrail stock owned by the ESOP and although the MOI constitutes the Secretary's decision, assuming all conditions for sale are satisfied, to sell the government's interests in Conrail to Norfolk Southern, the MOI does not purport to sell the ESOP's interest in Conrail or require conveyance of the ESOP's interest at any price. Instead, the MOI provides only that at or prior to closing, Norfolk Southern or Conrail "shall have made *appropriate arrangements* with respect to the employees of Conrail to accomplish (i) the acquisition [by Norfolk Southern] of such employees' 15% beneficial interest in Conrail." MOI, ¶ 2 (emphasis supplied). An exhibit to the Memorandum of Intent listing Norfolk Southern's "proposed arrangements for Conrail employees" notes that Norfolk Southern has committed "a total amount of $375 million, of which an amount determined to be the fair value of the assets and rights of the existing Conrail ESOP shall be contributed to such ESOP." The MOI further provides as a condition to the government's obligation to sell that "[l]egislation shall have been enacted ... providing a mechanism for definitively valuing the existing Conrail employee stock ownership plan[.]" MOI, ¶ 9(d).

**11.** Indeed, the Senate Committee on Commerce, Science and Transportation, the only congressional body to take action to date on legislation providing for the sale of Conrail, apparently adopted proposed legislation that did not include a provision addressing this issue. The Committee Report accompanying the Committee bill states that "it will be necessary to offer an amendment containing such a mechanism when S. 638 is brought to the Floor." S.Rep. No. 99–98, 99th Cong., 1st Sess. 41 (1985).

**12.** As this Court has stated:

If the United States eliminates or substantially impairs an owner's use of his property or requires him to convey it, there is a "taking," which gives rise to a claim under the Constitution, whether or not the United States so intended .... Such claims would be cognizable in the Court of Claims [pursuant to the Tucker Act] as claims founded upon the Constitution, unless the Act [authorizing the taking] by fair implication withdraws such jurisdiction.

*In re Penn Central Transportation Co.,* 384 F.Supp. 895, 940–41 (Regional Rail Reorg.Ct. 1974) (noted with approval in *Regional Rail Reorganization Act Cases,* 419 U.S. at 126, 95 S.Ct. at 350). Thus in the *Regional Rail Reorganization Act Cases,* the Supreme Court held that the 3R Act did not bar a Tucker Act remedy for just compensation for any "erosion taking" effected by the 3R Act. 419 U.S. at 136, 95 S.Ct. at 355.

the absence of a ruling, plaintiffs will face continued uncertainty concerning the nature of any remedies that ultimately may be available to them. This falls far short of the hardship recognized in *Abbott Laboratories,* for example, where withholding resolution would have required "an immediate and significant change in the plaintiffs' conduct [ ] with serious penalties attached to noncompliance[.]" 387 U.S. at 153, 87 S.Ct. at 1518. Accordingly, this question is not yet ripe for adjudication.

### B. *Statutory Authority of Secretary*

■ Plaintiffs contend that Secretary Dole has exceeded her statutory authority by agreeing to the MOI and discussing possible terms for the sale of the ESOP stock. In plaintiffs' view, Secretary Dole has broad discretion with regard to the interests of the United States in Conrail but no role whatsoever with regard to discussions implicating the ESOP's interests.

This contention is without merit. Notwithstanding the conclusory allegations in the complaint, the record leaves no room for a genuine dispute as to the limited role that Secretary Dole has played to date with regard to the ESOP stock. As discussed above, the MOI does not purport to sell the ESOP's interest or require conveyance of that interest at any price. Moreover any sale of any Conrail stock to Norfolk Southern is, by the terms of the MOI, expressly conditioned on enactment of legislation ratifying the proposed sale to Norfolk Southern. MOI, ¶ 9(d). Thus, the Secretary has merely: a) made a commitment to sell the government's interests if "appropriate arrangements" are made with regard to the ESOP and Congress expressly authorizes the proposed sale to Norfolk Southern; and b) recommended that Congress enact legislation to provide for the sale.

We do not read the Secretary's authority as narrowly as plaintiffs. Section 401 of the 3R Act, as amended by NRSA, authorizes the Secretary to "submit to the Congress a plan for the sale, in block or by public offering, of the interest of the United States in the common stock of [Conrail]." Congress directed that such a plan achieve three goals: "A) ensure continued rail service; B) promote competitive bidding for such common stock; and C) maximize the return to the United States on its investment." In light of Congress' decision to vest the Secretary with substantial responsibility for proposing a mechanism for the sale of the government's interests in a manner consistent with these goals, we are not prepared to say that the Secretary's limited foray into matters touching on the ESOP's interests exceeded the Secretary's authority. This conclusion is buttressed by the general grant of authority in Section four of the Department of Transportation Act,[13] which directs the Secretary to "exercise leadership under the direction of the President in transportation matters" and authorizes her to "make recommendations to the President and the Congress for their consideration and implementation[.]" Because the Secretary has made enactment of legislation incorporating her recommendations a prerequisite to completion of the proposed sale, we hold that the actions before us do not exceed her statutory authority.[14]

### C. *Appointment of Independent Trustee*

■ Plaintiffs have also petitioned the Court to "relieve the Secretary of any control over the ESOP" and provide the beneficiaries of the ESOP "with the independent representation and trusteeship which every other ESOP is given as a birthright

---

**13.** Pub.L. 89–670 § 4, 80 Stat. 931 (Oct. 15, 1966) (codified at 49 U.S.C. § 1653).

**14.** The case at bar does not require the Court to consider two issues: a) whether the Secretary would exceed her statutory authority by conveying the ESOP's interests in Conrail in the absence of legislation addressing this issue; and b) whether the provision for limited Congressional review contained in Section 401 satisfies the principles enunciated in *Immigration & Naturalization Service v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). Plaintiffs concede that the former issue is not yet ripe while the latter issue is not implicated in plaintiffs' complaint.

under ERISA." [15] Plaintiffs concede that the Conrail ESOP is not subject to ERISA but contend that the existing structure governing the ESOP creates a "conflict of interest" between the Secretary's interests and those of the ESOP. Plaintiffs contend that "Congress could not have foreseen" this conflict and ask the Court to use its power to construe statutes to avoid absurd, unjust or unintended results to provide the independent trustee they seek. Plaintiffs' Opposition at 20–21.

As plaintiffs properly note, it is well established that statutes should be interpreted to avoid unreasonable results whenever possible. *See, e.g., American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982); *Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965). A court may depart from the literal construction of a statute "when such a construction would produce an absurd and unjust result and would clearly be inconsistent with the purposes and policies of the act in question." 2A Sands, *Statutes & Statutory Construction* § 45.12 (4th ed. 1973) (footnote omitted). Nevertheless we sit as judges whose task is to apply the law and may not ignore statutes merely because they may seem harsh. *See, e.g., First National City Bank v. Compania de Aguaceros, S.A.,* 398 F.2d 779, 784 (2d Cir.1968). Thus as one court has noted, "such an approach to interpretation of statutes must be used with the utmost caution, for the line between irrationality and mere bad policy is a wavering and uncertain one." *Sierra Club v. Environmental Protection Agency,* 719 F.2d 436, 445 (D.C.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984).

Viewed in this context it is clear that the statutory provisions plaintiffs rely on cannot be construed to grant the relief plaintiffs seek. Contrary to plaintiffs' characterizations, the statutory scheme suggests that Congress foresaw that officials charged with responsibility for the ESOP might face claims of conflict of interest in connection with a sale of Conrail, such as the claims raised in this action, but that Congress deliberately chose not to make these officials accountable to Conrail ESOP beneficiaries for any breach of fiduciary duties "under any federal or state law[.]" [16] In the face of this decision, it cannot be said that the present structure is inconsistent with the purposes and policies of the 3R Act, as amended. To conclude otherwise would go beyond construction or interpretation and require that this Court completely rewrite statutes enacted by Congress.[17]

Wherefore, it is ordered that plaintiffs' application for preliminary injunction is denied and it is further ordered that defendants' motions for summary judgment are granted.

---

**15.** ERISA is the common designation for the Employee Retirement Income Security Act, 29 U.S.C. § 1132 *et seq.*

**16.** Section 216(f)(8)(A) of the 3R Act provides that no ESOP manager:

> shall have or be subject to any fiduciary responsibility, obligation, or duty, nor shall any such person be subject to civil liability, under any federal or state law, as a fiduciary or otherwise—
>
> (i) in connection with the employee stock ownership plan ... on account of any reorganization or restructuring of [Conrail,] its successors or assigns, or their assets or capital structure ....
>
> (ii) for or in connection with ... the disposition of any [Conrail] security to the extent that such disposition is made in connection with a reorganization or restructuring of [Conrail] or [its] assets or capital structure, as directed or approved by ... the United States ....

45 U.S.C. § 726(f)(8)(A).

**17.** *See, e.g., Sierra Club,* 719 F.2d at 445 (Court's power limited to "strain[ing] the statutory language" to avoid unreasonable result).